The opinion of the court was delivered by
Fenner, J.
On the 3d day of March, 1890, John S. Herring executed an authentic act, by the terms of which he sold to plaintiffs several tracts of land for the price of $2500 cash, receipt of which is acknowledged in the deed. The act contained a stipulation that the vendor should have the right to take back the property within one year, and binding the vendees to reconvey on repayment to the latter of the sum of $2500, with interest, together with all sums which shall be expended by the purchasers for taxes, insurance and incidental expenses connected with said property. This act- was duly recorded. Herring died shortly after the sale. His succession was opened and his widow was qualified as administratrix. She caused the property to be inventoried as property of the succession, and provoked an order óf sale thereof, under which it was advertised to be sold on April 15, 1893.
Thereupon the plaintiffs brought the present suit, in which they set forth the authentic sale to them and their ownership in virtue thereof, charge the acts of the administratrix in causing the property to be inventoried and her proceedings for the sale thereof are wrongful and illegal, and injurious to them, and pray for a writ of injunction prohibiting and restraining her from proceeding further with said sale until the further orders of the court, and for judgment perpetuating said injunction.
The answer of the administratrix denies the ownership of plaintiffs, sets forth that the sale to them was “never legally completed, for the reason that they never paid the price, that the acknowledgment of the receipt of $2500, as expressed in the deed, is not true; that Thompson & Oo. never had actual delivery of the property, but the same has been and now is in the possession of defendant as legal representative of Herring’s succession; that plaintiffs have repeatedly acknowledged since, said deed was executed that the ownership of the property is in the. succession; that plaintiffs have shown no legal cause for injunction, and have wantonly *994 abused that equitable remedy” — and she prays for dissolution of the injunction with damages.
Judgment was rendered dissolving the injunction, with $100 damages, and authorizing the administratrix to proceed with the sale; from which judgment this appeal is taken.
It seems to us very clear that upon the face of the title conferred on them by the authentic act of sale plaintiffs were not bound to stand by and see that title ignored and the" property conveyed thereby sold at a judicial sale as the property of another, and that they were fully authorized to enjoin such proceedings, which could only be sustained on clear proof that the sale was a pure simulation. If the sale were a real transaction, whatever its character, the administratrix would be bound to secure its judicial revocation on compliance.with whatever obligations it might impose, before she could lawfully disregard it and sell the property as that of the succession. Lawler vs. Cosgrove, 39 An. 490. The allegations in the answer that the price had not been paid and that there had been no delivery of the thing sold do not necessarily import the nullity of plaintiff’s title. The Civil Code, Art. 2456, expressly declares: “The sale is considered to be perfect between the parties and the property is of right acquired to the purchaser, with, regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered nor the price paid.”
The articles of the code — 2487.and 2549 — referred to by defendant’s counsel do not conflict with this principle, but only import that the buyer, who has not paid the price due ■ under the terms of the sale, can not enforce delivery of the thing. The plaintiffs here do not demand delivery of the property, but simply that their title under the authentic act be respected until revoked by proper judicial proceedings.
Has the defendant proved that the sale is a simulation? We think not. We said in a recent case: “It is hornbook law in our jurisprudence that the verity and reality of authentic sales can be assailed by the parties thereto only in two ways, viz.: first, by means of a counter-letter; second, by the answers of the other party to interrogatories on facts and articles,” and we cited the numerous authorities to that effect. Godwin vs. Neustadt, 42 An. 738.
Defendant did not undertake to probe the conscience of plaintiffs, *995 nor does she produce any formal counter-letter; but she invokes the rule that letters and written acknowledgments of a party are in the nature of a counter-letter and are entitled to like effect, and she produces certain letters written by the plaintiffs to her attorneys in this case, which we have carefully considered.
The first acknowledges a letter received from defendant’s attorney and encloses an account against J. S. Herring for moneys advanced before the date of sale and for taxes and insurance paid on the property since the sale amounting to $1307.43, and then proceeds: “This is the amount due us. It is true that at one time we did agree to take $600 for our claim and the taxes to be returned to us. We made this proposition with the understanding that the $600 was to be paid at once, but Mrs. HerriBg did not accept the proposition and we shall now expect the entire amount due us paid before we relinquish our claim on the property.”
The second letter is dated December 21, 1892, and says: “We have received your favor of the 19th inst., and trust that a speedy adjustment of the Herring succession can be had. We are certainly not going to stand in the way, and the only thing that we desire is a recognition of our claims in account. We have no objection to Mrs. Herring selling the property provided our account is paid, and we, some time ago, made a still better proposition to Mrs. Herring, in effect that we would take less for our account than its face value. * * * We trust that you will be able to have Mrs. Herring sell the property and pay us our claim. We have no desire to press Mrs. Herring in the matter, but we accepted title to the property in perfect good faith for money advanced, and we think that our claim should have had more attention than has been accorded it heretofore.”
We can discover, in these letters, no acknowledgment that the sale was, in any sense, a simulation. On the contrary they assert that the sale was made in good faith for money advanced, and while acknowledging impliedly that the whole price had not been advanced as recited in the deed, they substantially claim that the amount due on the account was accepted as a partial payment and must be repaid before they would relinquish their title to the property. They simply evince the' willingness of the plaintiffs to forego their rights under the sale, and to permit the administratrix to take back and sell the property for account of the succession provided they were made whole by payment out of the proceeds of their account and expenses.
*996 The reality of the transaction is further shown by the admission that after the sale the property was assessed to plaintiffs and that they paid the taxes for the years 1890, 1891 and 1892.
The plaintiffs were not bound to establish more particularly, in this case, the precise character and circumstances of the transaction. They stood on their authentic title, which by itself was a sufficient ground for the relief sought, unless defendant could destroy it by proving in the manner provided by law that it was a mere simulation, which she certainly has not established.
The administratrix was permitted to testify over the objection of plaintiffs’ counsel to interviews with one of the plaintiffs, and she herself admits that “ he said he did not consider that the property belonged to the succession.” She adds: “ I claimed that it did for the reason that W. B. Thompson & Oo. had never paid the purchase price for said property. I told him that I would recognize his claim as a mortgage up to the amount I understood to be due him, which amount I understood to be $650 and the taxes paid on said property.”
The plaintiffs admitted and announce in this court their willingness to permit the sale to proceed provided their claim be ordered paid out of the proceeds. There thus seems to be no substantial dispute between the parties except as to the amount due. Plaintiffs’ account has not been proved in this case; but we think a judgment authorizing the sale to proceed and recognizing the right of plaintiffs to be-paid by preference out of the proceeds of sale, the amount of their claim to be established contradictorily between the parties, would promote a speedy settlement and advance the interests of justice.
It is therefore adjudged and decreed that the judgment appealed from be amended so as to reverse and set aside the allowance of damages against the plaintiffs and so as to recognize the right of plaintiffs to be paid by preference out of the proceeds of sale of the property; the amount due them on their account for moneys advanced and for taxes, insurance and expenses, the amount and verity of said account to be established contradictorily between the parties by judgment of the court and a sufficient amount of said proceeds to be retained to satisfy the said judgment when rendered, and that, in other respects, the judgment appealed from be affirmed; defendant and appellee to pay costs of this appeal.
*997 On Application to Amend Decree.
The motion to amend can not be granted.
The reasoning of the opinion entitled the plaintiffs to an absolute reversal of the judgment appealed from, and the qualified decree rendered was based exclusively on the consent of plaintiffs, and in the supposed interest of the defendant that the sale should be proceeded with. At the time of adopting the decree the court agreed that if defendant should complain and apply for rehearing it should be granted and a decree rendered reversing the judgment and perpetuating the injunction.
As defendant applies simply for an impossible amendment, inconsistent with the consent of plaintiffs, the application must be denied.