LAND, J.
Plaintiffs’ original and amended petitions were dismissed on an exception of no cause of action, and they have appealed.
The allegations of the petition may be stated substantially as follows:
Petitioners are five of the eight heirs and living representatives of their father, Gen. Montfort Wells, and of their mother, Mrs. Jeanette Wells, late of the parish of Rapides, .both of whom died about the year 1882. Petitioners inherited the undivided five-eighths of the property owned by said decedents at the time of their deaths.
The other three heirs are T. Jeff Wells, Charles M. Wells, and the heirs of Mrs. Ella Blackman.
At the time of their deaths, the father and mother of petitioners owned certain tracts of land situated in the parish of Rapides, aggregating about 2,060 acres, which are well worth $20,000.
Gen. and Mrs. Wells many years ago, for their own purposes and convenience, placed these lands in the name of T. Jefferson Wells by paper titles duly recorded, for which no value was given.
T. Jefferson Wells agreed at the time to hold said lands for his father under a promise and obligation to reconvey them to him at any time he so desired.
T. Jefferson Wells for many years held said lands under said paper title and agreement, but, becoming financially embarrassed he placed the mere paper title in the name of Mrs. Ida F. Wells, his wife, who as a mere party interposed, held them in her name as the property of petitioner’s father and mother, pursuant to the original agreement and understanding with her husband.
Gen. Montfort Wells, shortly before his death, fearing that said lands might become involved in tutorship proceedings and thereby be lost to him and his heirs, requested T. Jefferson Wells to transfer the same to Charles M. Wells, who agreed and bound himself verbally to hold said lands for Gen. and Mrs. Wells and their heirs and legal representatives and to transfer the same at any time, when so requested to do by the parties in interest.
The transfer from T. Jefferson Wells an his wife to Charles M. Wells was not made until the day of the death of Gen. Wells or the day before he was buried, when, pursuant to the agreement and understanding *1068 above recited, which was then and there expressly consented to by Charles M. Wells, a paper deed of conveyance to said lands was executed by T. Jefferson Wells and wife and accepted by Charles M. Wells, without any consideration whatever except said agreement and understanding.
The said paper title or conveyance was delivered to said Charles M. Wells, but was never recorded.
In January, 1888, because of some defect in the description of a portion of said lands, and for no other purpose, the said T. Jefferson Wells and wife made another paper title and conveyance to said Charles M. Wells for an alleged consideration of $2,000, no part of which was or has ever been paid, but said transfer was made in accordance with and in continuation of the previous agreement and understanding, had when the paper title was first transferred to Charles M. Wells.
Portions of the land sued for were not included in the transfers from Mrs. Ida F. Wells to Charles M. Wells, but were in 1890 and 1892 transferred, by mere paper title, by T. Jefferson Wells to Charles M. Wells, pursuant to the agreement and understanding already recited.
In March, 1905, Charles M. Wells sold 600 acres of said lands for the price of $7,500, paid in cash.
Thereupon the present suit was instituted to recover five-eighths of said price and the same proportion of the lands remaining unsold.
The original petition alleged that, if any counter letter or letters ever existed, they had been lost or destroyed, and that their only recourse in law was to have the defendant answer under oath and in open court certain questions on facts and articles which were propounded by plaintiffs. It was so ordered by the court. In his answers the defendant denied all knowledge of the agreements, understandings, and transfers alleged to have been made prior to the year 1888, and specially denied that he had ever held said lands for account of the heirs of Mont-fort Wells and wife.
Defendant objected to answering the interrogatories relative to the sales made to him in 1888, 1890, and 1892 by Mrs. Ida P. Wells and husband, and his objections were sustained.
Previous to answering the interrogatories, defendant sued out a rule to vacate the order directing him to answer on the ground that plaintiff’s petition disclosed no sueable interest, and on the further ground that T. Jefferson Wells derived his title directly from the United States, and not from Montfort Wells.
This rule was dismissed on exception, and need not be further noticed.
Several documents purporting to be copies of title referred to in the rule are found in the transcript, but do not appear to have been offered or filed in evidence. Such documents cannot be considered.
The only question before us is whether the petition as amended discloses a cause of action.
The obscurity of the allegations as to the original connection of Montfort Wells with the title to these lands makes it difficult to; state the case as disclosed by the pleadings.
It is not specifically alleged that Montfort Wells had a title which he transferred to his son, T. Jefferson Wells, nor can such an inference be deduced from the vague allegation that Montfort Wells and wife “placed these lands in the name of T. Jefferson Wells” on the records of the parish.
The situation as alleged is that, while T-Jefferson Wells was the ostensible owner of these lands, they really belonged to his' father and mother, and were held for their aeeount and benefit.
In other words, these lands were held in trust by T. Jefferson Wells, and were by him transferred to his wife, and by her techarles M. Wells, subject to the same trust 1 *1070 resulting from a common, continued, and well-recognized parol agreement and understanding between all tbe parties in interest.
In order to prove this trust as against Charles M. Wells, plaintiffs propounded to him interrogatories on facts and articles.
Defendant answered that he had no knowledge of the trust agreement set forth in the petition and never had at any time held said lands for account of the heirs of Montfort Wells and wife.
In Godwin v. Neustadtl, 42 La. Ann. 735, 7 South. 744, this court, in a well-considered opinion, held that when the plaintiff, having no counter letter, proceeds in limine to probe the conscience of the defendant by evoking his answers to interrogatories, such answers stand as part of the pleadings, and if they are destructive of plaintiff’s action an exception of no cause of action will lie.
In the same case, the court further held that, when answers to interrogatories on facts and articles are resorted to for the purpose of supplying the place of a counter letter, and to make proof which nothing else but a counter letter could make, they cannot be contradicted otherwise than by written evidence.
In their original petition, plaintiffs alleged that no counter letter or letters existed to their knowledge, and that “their only recourse at law” was to probe the conscience of the defendant.
In Heirs of Dohan v. Dohan, 42 La. Ann. 449, 7 South. 569, this court held that parol testimony, to show fraud or simulation in a sale of immovable property to the prejudice of forced heirs, may in a certain class of cases be introduced, but such evidence never can be introduced by the heirs, without the consent of the adverse party, to show title in the ancestor to such property; and in the same ease it was further held that testimonial proof is not admissible for the purpose of proving that a third person was interposed to receive or to be invested with the title to real estate, for the use of, and instead of, the intended vendee. Oiv. Code, arts. 2275, 2440.
The doctrine thus enunciated was reaffirmed by this court in Westmore v. Harz, 111 La. 306, 35 South. 578, and in Ackerman v. Peters, 113 La. 156, 36 South. 923.
Plaintiffs have not alleged title in Gen. Wells otherwise than by virtue of a parol agreement with T. Jefferson Wells, who held the legal title duly recorded.
A similar parol agreement is alleged to have accompanied the subsequent transfers of the same title.
Plaintiff’s action is to establish an equitable title in Montfort Wells resulting from the alleged trust agreements, and is not an action to annul as simulated or fraudulent any contract made by their father to their prejudice as forced heirs.
Hence article 2239 of the Civil Code, as amended by Act No. 5, p. 12, of 1884, has no application, as the petition discloses no simulated or fraudulent contract to be annulled by parol evidence.
Judgment affirmed.
NICHOLLS, J., absent