(106 So. 735)

No. 24673.

## GLOVER et al. v. ABNEY et al.

(Nov. 2, 1925. Rehearing Denied Jan. 4, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Descent and distribution** ☞69—Succession; forced heir, covendor of ancestor, may not disprove sale by parol.

Civ. Code, art. 2239, under which forced heir may be permitted to establish by parol that instrument purporting to be absolute sale of realty by his ancestor is in fact mortgage, does not apply to authentic act of sale in which forced heir joined as vendor, in which case, under articles 2236, 2275, 2276, such parol evidence is inadmissible.

2. **Appeal and error** ☞333—Change of parties, while appeal was pending, had no retrospective effect on admission of evidence.

Where forced heir, because she had joined ancestor as covendor in conveyance, was unable to defeat conveyance by parol under Civ. Code, art. 2239, and died pending appeal of her case, substitution of her grandchild and forced heir as party to suit did not have retrospective effect of making such evidence admissible, regardless of grandchild's rights under article 2239 in another suit.

3. **Estoppel** ☞15—Grandchildren of vendor cannot attack deed by parol after giving quitclaim deed.

Where grandchildren of vendor, not parties to deed, subsequently executed quitclaim deed to purchaser, they cut themselves off from all rights they otherwise might have had to attack original deed by parol.

4. **Vendor and purchaser** ☞84—Sales; purchaser's promise to reconvey held not to constitute sale with right of redemption.

Where purchaser, on date of sale, executed instrument promising to reconvey to one of two vendors within five years, and stipulating terms of such conveyance, *held* execution of such instrument did not entitle vendor, or those claiming under him, to right of redemption.

5. **Vendor and purchaser** ☞84—Sales; "sale with right of redemption" defined.

"Sale with right of redemption" is sale in which vendor reserves right to take back property by returning price paid, in view of Civ. Code, art. 2567.

[Ed. Note.—For other definitions, See Words and Phrases, First and Second Series, Sale.]

6. **Vendor and purchaser** ☞3(4), 18(1)—Sales; purchaser's promise in writing to reconvey held a mere option; option without consideration held not binding.

Promise in writing, without consideration, by purchaser to sell entire tract back to one of two vendors within five years, could be classified only as instrument purporting to grant option, and, since option must be supported by valuable consideration, in view of Civ. Code, art. 2462, as amended by Act No. 249, of 1910, it is not binding on purchaser, his widow, or heirs.

O'Niell, C. J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Suit by Mary J. Glover and others against Mrs. Jennie Abney and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellants.

E. W. & P. N. Browne, of New Orleans, for appellees.

OVERTON, J. Barcus and Millie Hubbard, presumably man and wife, were the owners of a tract of land situated in the parish of Caddo, and containing about 253 acres. Millie Hubbard died at her residence in the state of Texas, leaving a last will and testament, by which she bequeathed to her son, Lewis Glover, referred to elsewhere in the record as Lewis Thompson, a part of this land, and to her daughter, Mary J. Glover, the remainder of her interest therein.

GLOVER v, ABNEY

On February 10, 1914, Mary Glover and Barcus Hubbard sold the entire tract of 253 acres to Zach Abney for the recited consideration of $1,750, cash in hand paid. The deed conveying the property is by notarial act, is absolute on its face, and conveys the land with full warranty of title.

On the same day on which the foregoing deed was executed, or on the day following, Zach Abney executed, at Shreveport, La., in favor of Barcus Hubbard, one of the vendors named in said deed, the following instrument, to wit:

"Know all men by these presents that, whereas I have purchased from Barcus Hubbard and Mary Glover two hundred and fifty-two (252) acres of land in Caddo parish, as per deed of this date passed before G. L. Jones, notary public in and for Harrison county, state of Texas, I hereby obligate and bind myself and agree to sell said land back to the said Barcus Hubbard within 5 years from this date for the consideration of one thousand and seven hundred and fifty dollars, payable as follows: One-third cash, and the balance in not more than three notes of equal amounts, due one, two and three years after date, with interest at 8 per cent. per annum from date and retaining a vendor's lien and mortgage on the said land to secure the payment thereof. Said conveyance however, is to be without warranty express or implied."

While Barcus Hubbard and Mary Glover sold the entire 252 acres to Zach Abney, yet, as appears from what we have already said, they did not own the entire tract, for Lewis Glover, or Thompson, as he is sometimes styled, owned a part of it, which he acquired by bequest from his mother.

Lewis Glover died, and Abney, desiring to obtain a perfect title to the land, obtained from Glover's children, in the summer of 1914, a quitclaim deed to all of their right, title, and interest in and to the 252-acre tract, purchased by him from Barcus and Mary Glover.

After making the sale to Abney, Barcus Hubbard died, leaving as his heirs Mary Glover, who, it is alleged, is his daughter, and the children of Lewis Glover, deceased, who, it is alleged, are his grandchildren, representing their father, in their grandfather's succession. After the execution of the foregoing deed, Abney died, leaving a wife in community with him, and four children, all of whom are minors.

In February, 1918, almost four years after Mary Glover and Hubbard executed the deed to Abney, the alleged heirs of Hubbard, through their counsel, addressed the following communication to Mrs. Abney, to wit:

"On February 10, 1914, Barcus Hubbard and Mary Glover conveyed to Mr. Zach Abney a certain tract of land of 303 acres surveyed off of the Hearne plantation, as appears by deed in Conveyance Book 90, p. 595, of the records of this parish.

"On the same date Mr. Abney gave to Barcus Hubbard and Mary Glover a statement showing that he had purchased this land, and obligating himself to sell the land back to Barcus Hubbard within five years from that date for the consideration of $1,750, which agreement is duly recorded in Conveyance Book 91, p. 442.

"Representing the heirs of Barcus Hubbard, we are directed to request that you meet one of us, or them, at the courthouse, in the city of Shreveport, La., on Saturday, February, 9, 1918, for the purpose of reconveying said property to them and accepting the consideration mentioned in said agreement. Either one of the heirs or one of us will be present at the courthouse, in the clerk's office, on that morning at 10 o'clock a. m., to accept this reconveyance.

"Kindly let me hear from you at once, and very much oblige."

Failing to receive a reply to the foregoing communication, Mary Glover and the children of Lewis Glover instituted the present suit. They represent, among other things, that they are the sole legal heirs of Barcus Hubbard, who owned an undivided half interest in said property, and that one of them, Mary Glover, was the owner also of the remaining undivided half interest therein, under the last will and testament of her mother, Millie Hubbard. They allege that they have remained in possession of the property since the sale to Abney; that said sale was made simply to

secure Abney in the repayment of $1,750, the amount of the consideration stated therein, and was not intended as a real and actual sale of the property, and at most is only a mortgage. They also allege that, since the execution of the deed to Abney, they have delivered to him 13 bales of cotton, worth $997.50, and that Abney collected from an oil and gas lease made by him on the property royalties amounting to $253. They also allege that, when they made demand on Mrs. Abney to reconvey the property in accordance with Abney's promise to do so, they were willing, in order to avoid a lawsuit, to pay her $1,750 for the redemption of the property, and to waive credit for the 13 bales of cotton delivered by them to Abney, and also credit for the royalties collected by Abney on the oil lease, mentioned above, to which, they aver, they were legally entitled, but that, inasmuch as Mrs. Abney failed to comply with the demand made by them upon her for the reconveyance of said property, they are no longer willing to waive said credits and are entitled to have them imputed against said sum of $1,750. Those of the petitioners who are the heirs of Lewis Thompson admit that they executed the quitclaim deed heretofore mentioned, but allege that the deed was executed in pursuance of the transfer, made by Hubbard to Abney, and because the will of Millie Hubbard had never been probated in the parish of Caddo.

The prayer of the petition is that said pretended act of sale by Barcus Hubbard and Mary Glover to Abney be declared a mortgage, or act of security, and that said property be decreed to belong to plaintiffs, free from any claims of said Abney, deceased, or his wife and children, on the repayment to said Abney's wife and children of said sum of $1,750, less the aforesaid credits, and plaintiffs then, treating the act attacked as a sale with the right of redemption, pray, in the alternative, that they be permitted to ex-

ercise their right to redeem said property on paying said sum less said credits, and they pray for general relief.

Defendants, after filing certain exceptions, unnecessary to mention, filed their answer. They deny that the act executed by Barcus Hubbard and Mary Glover is a mortgage or sale with the right of redemption, and aver that it is only what it purports to be on its face, to wit, a sale conveying absolutely to said Abney the title to said property. They deny that the quitclaim deed, made by the heirs of Lewis Glover to Abney, was made for any other purpose than that of conveying absolutely to him the interest of said heirs in the same land conveyed to Abney by Barcus Hubbard and Mary Glover. They also aver that, if any cotton was delivered to Abney by any of the plaintiffs herein, it was delivered in payment of debts due by them or their authors, secured by lien on property other than that in contest herein, situated in the state of Texas. They further aver that, if Abney ever signed an agreement to resell the property, the agreement was without consideration, and was therefore void, and, moreover, that such an agreement, if signed, was purely and strictly personal between Abney and Hubbard, and is not enforceable by the successors or assigns of Hubbard against the successors or heirs of Abney. They pray that plaintiffs' demands be rejected, and for general relief.

The case was tried, and the trial resulted in a judgment for defendants. Plaintiffs appealed from the judgment rendered to the Court of Appeal for the Second Circuit. As the value of the thing in dispute exceeded the jurisdiction of the Court of Appeal, that court transferred the appeal to this court.

After the case had been transferred to this court, Mary Glover died; leaving as her only heir Roberta Glover Chance, who, by motion duly granted, has been made a party to this appeal, to the end that she may pros-

ecute it in lieu of her deceased ancestor, Mary Glover.

The first question to be disposed of, which in our view is one of the principal questions in the case, arose at the very commencement of the trial. At that point, in the proceedings had, plaintiffs undertook to prove by parol evidence the purpose for which the deed by Barcus Hubbard and Mary Glover in favor of Abney was made. The attempt to do so caused defendants to interpose several objections; the second among them being that parol evidence is inadmissible to alter, vary, or contradict the terms of the written instruments described in plaintiffs' petition, which, of course, includes the deed by Hubbard and Mary Glover to Abney. The court was sitting without a jury, and admitted the evidence subject to the objections of counsel; and, at the same time, made the objections and the ruling thereon general as to all similar testimony that might be offered under the petition.

Defendants rely primarily in support of their objection, as to the inadmissibility of parol evidence, on articles 2236, 2275, and 2276 of the Civil Code, which read as follows:

"Art. 2236. The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

"Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the property thus sold."

"Art. 2276. Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."

[1] Articles 2236 and 2276, quoted above, apply only to the parties to the act and their privies. Mary Glover, who died pending this appeal, was one of the parties to the act of sale to Abney, and was one of the plaintiffs who instituted this suit and who sought to show by parol evidence that the sale by her and Hubbard to Abney is not a sale, but a mortgage or other form of security. The sale mentioned is one by authentic act, drawn in the usual form. It contains no clause showing, or even suggesting, that the vendors, in making the sale, reserved the right to redeem the property, but purports to transfer in unambiguous language, for an adequate consideration, the property to Abney, his heirs and assigns forever. It is not contended that the signatures of the vendors to the deed were procured by fraud or duress, or that there is error in the confection of the instrument.

In a recent case, one in which the vendor by authentic act sold real property to another, and thereafter sought to show by parol evidence that the sale was not a sale, but a mortgage, this court said:

"The court below, over defendant's objection, admitted parol evidence to sustain plaintiff's attack on defendant's title.

"We think the ruling was erroneous. It violated two statutory inhibitions against the admission of parol evidence: First, to prove the contents of an authentic act, R. C. C. art. 2236; and secondly, to establish title to immovable property, R. C. C. arts. 2275, 2276.

"The jurisprudence has uniformly maintained the codal rules, permitting the verity and reality of authentic sales to be assailed by the parties thereto only by means of a counter letter, or the use of interrogatories on facts and articles, or where fraud or error is alleged and proved. Robinson v. Britton, 137 La. 863, 69 So. 282; Maskrey v. Johnson, 122 La. 791, 48 So. 266; Wells v. Wells, 116 La. 1065, 41 So. 316; Franklin v. Sewall, 110 La. 292, 34 So. 448; LeBleu v. Savoie, 109 La. 680, 33 So. 729; Thompson v. Herring, 45 La. Ann. 994, 13 So. 398; Godwin v. Neustadtl, 42 La. Ann. 735, 7 So. 744, and authorities therein cited." Harris v. Crichton, 158 La. 358, 104 So. 114.

However, the case of Harris v. Crichton, from which the foregoing excerpt is taken, is not in all respects similar to the case at bar. There are certain differences between

the two cases which must be considered before applying, at least without reservation, the rules stated in that case to the case at bar. One of these differences is that, in the Harris Case, Harris claimed to be the owner of the entire tract conveyed by him to Crichton, and sought to show by parol evidence that the sale made by him was not a sale, but a mortgage, whereas in the present case Mary Glover, one of the vendors of the land here in controversy, joined in this suit to have the sale, which she, together with her father, Barcus Hubbard, executed in favor of Abney, declared to be a mortgage, not only because of the interest owned by her in the land at the time of the sale, but, in addition, also because of the interest in said land which she claimed to have inherited from her father and covendor, Barcus Hubbard. What makes it necessary to consider this difference is that article 2239 of the Civil Code, as amended and re-enacted by Act No. 5 of 1884, confers upon forced heirs the right to annul by parol evidence the simulated contracts of those from whom they inherit, and the question arises whether, in view of this article, as amended, Mary Glover, by virtue of the fact that she was a forced heir of Barcus Hubbard, had the right to establish by parol evidence that the sale by her and Hubbard to Abney was, in fact, a mortgage.

In our opinion, while article 2239 of the Code is sufficiently broad to permit a forced heir to establish by parol that an instrument that purports on its face to be an absolute sale of real property, by his ancestor, is in fact not a sale, but instead is a mortgage, yet, in our view, the article has no application in a case such as the present, where the forced heir joins in the act as a vendor with the ancestor. While the purpose of the article, as amended, is to protect forced heirs by giving them rights not granted to other heirs, yet the purpose is not to protect them to the extent of permitting them to attack acts by parol evidence to which they, themselves, are parties, merely because an ancestor from whom they inherit was also a party to the act.

[2] Another difference between the Harris Case and the case at bar, which must be considered before applying the rules stated in the former to the latter, is that in the former the plaintiff, Harris, who was the vendor in the deed, which he sought by parol evidence to show was a mortgage, lived to prosecute his appeal to final judgment, whereas in the case at bar one of the plaintiffs, Mary Glover, the one who signed the deed to Abney, died pending this appeal, leaving, as we have seen, a grandchild, Roberta G. Chance, who occupies the position of a forced heir in Mary Glover's succession, and who has been made a party to this appeal. Hence the question arises whether Roberta Chance, who did not sign the deed to Abney, may, by reason of the death of her grandmother, take advantage of the parol evidence offered by the latter to show that the sale to Abney was, in fact, a mortgage, in view of article 2239 of the Civil Code, cited supra, providing that forced heirs may attack by parol evidence the simulated acts of those from whom they inherit. In our view, this difference between the two cases, like the other difference mentioned above, is immaterial. The only effect of the death of Mary Glover, pending the appeal, and the making of her grandchild a party to the appeal, in her place, is to enable the grandchild to prosecute the appeal the same as her grandmother might have done had she lived, but with no greater or less effect. This change in the parties to the appeal did not have the retrospective effect of making evidence, which was not admissible, when the case was tried and decided below, competent evidence on appeal, whatever may be the rights of the grandchild in another suit to have the sale declared a mortgage.

[3] With respect to the heirs of Lewis Thompson, it may be said that they do not

claim to be heirs of Mary Glover, but their contention is that their father, now deceased, was a son of Barcus Hubbard, whom they claim to represent in the succession of Hubbard, and hence, their position is that they occupy the place of forced heirs in Hubbard's succession, inheriting a part of the interest apparently conveyed by Hubbard by the deed executed by him and Mary Glover to Abney. While there is no evidence in the case to support the contention that these plaintiffs are the grandchildren of Barcus Hubbard, though this was an issue in the case, yet, for the purpose of determining whether or not the parol evidence offered by them was admissible to show that the deed executed by Barcus Hubbard and Mary Glover is not a sale, but a mortgage, we shall assume that they are grandchildren of Barcus Hubbard. So assuming, it may be said that, while these plaintiffs did not sign the deed executed by Hubbard and Mary Glover, yet a few months after the execution of that deed they virtually made themselves parties to it by executing, by private act, duly acknowledged, a quitclaim deed in favor of Abney to the same property as that apparently conveyed to him by the Hubbard and Glover deed. In our view, by executing that deed, they cut themselves off from all rights they otherwise might have had to attack by parol the deed executed by Hubbard and Mary Glover to Abney.

For the foregoing reasons our conclusion is that parol evidence was inadmissible to show that the sale executed by Hubbard and Mary Glover to Abney is a mortgage instead of what it purports to be on its face—an absolute sale, and such, we may add, seems to have been the final conclusion of the trial judge, as appears from his opinion in the record.

[4] The next questions to be considered arise out of the document, quoted above, by which Abney agreed to resell to Hubbard the land conveyed to him by Hubbard and Mary Glover. It will be recalled that by this instrument Abney agreed to resell the land to Hubbard within five years from the date of the instrument for $1,750, partly cash and partly on terms of credit. It is contended that the execution of this instrument had the effect of making the sale one with the right of redemption, or, at least, that the instrument grants to Hubbard and to his heirs a valid option to purchase the property.

With respect to sales with the right of redemption, this court said in Pitts v. Lewis, 7 La. Ann. 552, that—

"It is elementary that there is no vente à rémérè unless the right to take back the property, on refunding the price, be stipulated in the act of sale, so as to form one of the reservations of it, and that if it is appended by a subsequent act to a sale originally pure and simple, it is either a resale or a promise to sell."

Of course, the court in the case cited had no reference to those instances in which the right of redemption, though not appearing in the sale, is made to appear by a counter letter or by answers to interrogatories on facts and articles.

In our view, the execution of the instrument under consideration did not have the effect of making the sale by Hubbard and Mary Glover a sale with the right of redemption, and does not answer the purpose of a counter letter by showing that the sale, as agreed to, was, in truth and in fact, one with the right of redemption.

[5, 6] A sale with the right of redemption, or vente à rémérè is a sale in which the vendor reserves the right to take back the property by returning the price paid for it. Civil Code, art. 2567. The instrument under consideration does not show that the vendors, Barcus Hubbard and Mary Glover, reserved any right whatever to redeem the property sold by them. To the contrary, the instrument, instead of showing that they reserved

any such right, shows that one of them, to wit, Hubbard, was given the right by the vendee to purchase not only that part of the property which he himself sold, but also the part that his covendor, Mary Glover, sold. Whatever right, if any, there is flowing from the instrument is a right granted by the vendee, and not one reserved by the vendors, and therefore cannot be classified as an instrument granting a right of redemption, but only as one purporting to grant an option. To be valid as an option the instrument must be supported by a valuable consideration. Civil Code, art. 2462, as amended by Act 249 of 1910. The instrument does not recite a consideration, and the evidence aliunde, in so far as it is possible to show a negative, shows that there was no consideration. In fact, the instrument appears to be nothing more than a naked promise to sell to Hubbard, signed by Abney, and made after the sale was consummated, and to all appearances not thought of until then. Abney was not bound by this naked promise, and consequently his widow and heirs are not bound by it.

For the foregoing reasons we think that the judgment of the lower court rejecting plaintiffs' demands is correct.

The judgment appealed from is therefore affirmed; appellants to pay the costs.

O'NIELL, C. J., dissents.

LAND, J., recused.