HOOD, Judge.
This is an eviction proceeding instituted under the provisions of LSA-R.S. 13:4911 *676 et seq., by Mrs. Gloria Gross and her husband, Paul N. Gross, against William Brooks, affecting a 60-acre tract of land in Natchitoches Parish. Defendant filed exceptions of no cause or right of action, an answer and a reconventional demand. The exceptions of no right or cause of action were overruled, and after trial of the case on its merits judgment was rendered in favor of plaintiffs, rejecting the reconventional demands of defendant and ordering defendant to vacate the premises. Defendant has appealed from that judgment.
The record shows that defendant Brooks acquired title to the 60-acre tract of land involved in this suit in 1951. He subsequently mortgaged that property to J. M. Henry, Jr., to secure an indebtedness of $1,000, and he executed a second mortgage on the same property in favor of J. Makar to secure an indebtedness of $900.
In the fall of 1959, defendant was notified that the mortgage held by J. M. Henry, Jr., would be foreclosed shortly thereafter unless the indebtedness secured by that mortgage was paid in full. Defendant was unsuccessful in refinancing this indebtedness locally, so he contacted Tom T. Foster, of Shreveport, and requested financial assistance from him. Mr. Foster is the father of Mrs. Gloria Gross, one of the plaintiffs in this suit, and since Mrs. Gross resides in Wyoming Mr. Foster was acting as her agent in acquiring property and in negotiating other financial transactions for her within the State of Louisiana. Mr. Foster, acting on behalf of Mrs. Gross, at first agreed to loan defendant an amount sufficient to pay the Henry indebtedness, with the understanding that the loan would be secured by a first mortgage on defendant’s property. Foster employed an attorney to examine the title, however, and he testified that upon being advised by this attorney of the existence of a second mortgage in favor of Makar, he informed Brooks that he was not willing to loan him enough money to clear the property of both of these mortgages, and he suggested that Brooks get someone else to finance it for him. There were further negotiations between Brooks and Foster after that time, however, and according to Foster’s testimony these negotiations resulted in an agreement by which the property was to be sold to Mrs. Gross.
On October 26, 1959, defendant and his wife accompanied Foster to the office of Jack O. Brittain, an attorney and notary in Natchitoches, and in the presence of this notary and two attesting witnesses, William and Clarice Brooks executed an authentic act of sale conveying the 60-acre tract of land to Mrs. Gloria Gross for a recited consideration of $2,114.30. Out of this purchase price both of the mortgages were satisfied and cancelled and the expenses of completing the sale were paid. Defendant Brooks contends that he did not receive the full amount of the purchase price, but the evidence fails to establish that fact.
A few days after this sale was completed Foster loaned Brooks over $300, which amount was used by the latter to pay other debts, and as security for the repayment of this loan Brooks gave Foster a chattel mortgage covering and affecting some cattle. The amount of this loan waas subsequently repaid by Brooks and no issue is raised in this suit as to that chattel mortgage or as to the indebtedness which it secured.
Defendant Brooks has continued to occupy and reside on the property since the date of this sale. In March or April, 1960, however, Foster advised him that he would have to start paying rent or that he would have to vacate the premises. No rental payments were made, and consequently this eviction proceeding was instituted on August 22, 1960. Between the date of the sale and the time Brooks was notified to pay rent, however, Foster incurred expenses amounting to more than $200 in planting pine trees on the property and otherwise improving it.
*677 Defendant alleges and contends (1) that the purported deed dated October 26, 1959, was in fact a security contract; (2) alternatively, that the purported conveyance was a sale with a right of redemption; (3) that the purported conveyance was procured through fraud and misrepresentation, and accordingly that it is invalid; (4) alternatively, that defendant and his wife executed the purported deed in error as to the motive, nature and character of the transaction and in error as to the law; and (5) that the sale was void for lesion beyond moiety.
The jurisprudence of this state is well settled to the effect that, as between the parties and in the absence of evidence to the contrary, a sale of immovable property will be regarded as a contract of security, if the vendor specifically reserves the right of redemption and thereafter remains in possession of the property sold during the entire . period allowed for redemption. Marbury v. Colbert, 105 La. 467, 29 So. 871; Latiolais v. Breaux, 154 La. 1006, 98 So. 620; Jackson v. Golson, La.App. 2 Cir., 91 So.2d 394 and La.App., 111 So.2d 876. In the instant case, however, the vendor in the deed did not reserve the right of redemption, so there is no legal presumption that the purported sale was in fact a contract of security. See Glover v. Abney, 160 La. 175, 106 So. 735.
Defendant, of course, would be entitled to have the act of sale anulled or to have it reformed to show that it was actually a pignorative contract, or a sale with the right of redemption reserved to the vendor, upon establishing that he was induced to sign the contract through fraud or misrepresentation.
At the time of the trial, defendant Brooks was a 56-year old colored man who had a fourth grade education and who could scarcely read or write. His wife, Clarice Brooks, had only a second grade education, and she could neither read nor write. Both William and Clarice Brooks testified that they thought the document which they signed in the notary’s office was a mortgage, and that they would never have signed it if they had been aware of the fact that it was a deed.
The notary before whom the act of sale was executed testified that Brooks talked to Foster about repurchasing the property from Mrs. Gross at some undetermined future time and for an unspecified sum of money. This conversation took place out of the presence of the notary, but reference to it was made in his presence. The notary further testified that he asked Foster, in the presence of Brooks, whether the deed should specify that Brooks would have the right to' re-purchase the property, and although he does not remember what was said in response to that question, he assumes' that Foster told him that such a clause should not be included, since no such provision was incorporated into the deed. The notary recognized the semi-literacy of William Brooks, but he stated that, although Brooks might have assumed that a right of redemption existed even though not specified in the deed, there was no question but that William Brooks fully understood that he was transferring ownership of the 60-acre tract of land to Mrs. Gross. He testified that, as a notary public, he made it a regular practice to explain carefully to the parties involved the nature of the transaction, and that he was particularly careful in this regard when one or more of the parties was illiterate or semi-literate.
The evidence further shows that on November 3, 1959, just a few days after the sale had been completed, the attorney and notary who handled this transaction mailed to Brooks copies of two letters stating specifically that Brooks had sold the property to Mrs. Gross, that Brooks had not retained any minerals affecting the property and that Mrs. Gross was the full owner of a good and merchantable title to the property. Although Brooks says he informed the notary shortly after receiving these letters that he had not sold the property, the testimony of the notary to the contrary convinces us that Brooks did not contact *678 the notary after these letters were received by him and that he did not protest the statements made in those letters.
Article 1847 of the LSA-Civil Code provides, in part:
“Art. 1847. Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. * * * ”
In Sanders v. Sanders, 222 La. 233, 62 So.2d 284, 286, the Supreme Court stated:
“In the jurisprudence of this court it has been said that the charge of fraud is a most serious one; that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced. Strauss v. Insurance Co. of North America, 157 La. 661, 662, 102 So. 861; Garnier v. Aetna Insurance Co. of Hartford, Conn., 181 La. 426, 159 So. 705; Mutual Life Ins. Co. of New York v. Rachal, 184 La. 430, 166 So. 129; Metcalf v. Monsour, 195 La. 570, 197 So. 235; Mente & Co., Inc. v. Roane Sugars Inc., 199 La. 686, 6 So.2d 731; American Guaranty Co. v. Sunset Realty & Planting Co., Inc., 208 La. 772, 23 So.2d 409. It has also been said that evidence showing that the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence. Angichiodo v. Cerami, D.C., 35 F.Supp. 359; Fort v. Metayer, 10 Mart. (O.S.) 436; Charrotte v. Lousiana College, 1 La.App. 438; Woodward v. Barringer, La.App., 24 So.2d 200.”
In cases such as the one presented here, where the parties are not on an equal footing intellectually and are not dealing at arms length, courts are particularly careful to scrutinize the evidence to be certain that the party with greater knowledge does not take advantage of the ignorance of the other party. See, Griffing v. Atkins, La. App. 1 Cir., 1 So.2d 445. Here, however, although William and Clarice Brooks were relatively illiterate, the evidence shows that the notary public explained to Brooks that he was signing a deed transferring ownership of his property to Mrs. Gross. Brooks testified that prior to signing the deed the notary asked him if he realized that he was selling his place, and although Brooks states that he told the notary that he did not understand that, the question itself served to inform Brooks that the document was a deed instead of a mortgage, and in spite of that fact Brooks proceeded to sign it. According to Brooks’ own testimony, therefore, he was notified before signing the deed that he was executing an act of sale rather than a mortgage. The evidence does not establish that Foster or anyone else misrepresented the nature of the transaction to William Brooks. The burden of proving fraud was on defendant Brooks, and we, like the trial judge, are of the opinion that the burden has not been met.
Defendant further contends, alternatively, that he is entitled to have the purported act of sale rescinded and set aside because of error as to the motive, nature and character of the transaction and error as to the law. In support of that argument, counsel for defendant relies upon the provisions of Articles 1820-1833 and Articles 1841-1846 of the LSA-Civil Code and on the cases of Baker v. Baker, 209 La. 1041, 26 So.2d 132; Theriot v. Chaudoir, 17 La. 445; Williams v. Robinson, La.App. 2 Cir., 98 So.2d 844; and Green v. McDade, La.App. 2 Cir., 17 So.2d 637.
The facts in each of the cases cited by counsel for defendant clearly show that the vendor had executed the act of sale therein attacked through error. In Baker v. Baker, supra, for instance, the vendor was an illiterate Negro who had become indebted to the vendee. He executed what purported *679 to be an act of sale, conveying to the vendee property belonging to his separate estate. He received no consideration for the sale, he continued to live on the property, and several years later he eventually paid the ven-dee the indebtedness which he owed. When the indebtedness was paid, the vendee promptly reconveyed the property back to the vendor, both parties to the purported deed obviously acknowledging that it was actually a pignorative contract rather than a sale. The issue presented in the case was whether, as a result of these two purported sales, the property became a part of the community of acquets and gains which existed between the vendor and his wife. The Supreme Court held that the vendor in that instance had executed the deed in error, that he intended to sign a contract of security rather than a deed, and that the property continued to be a part of his separate estate. The facts in that case are clearly distinguishable from those in the instant suit, because there the vendor and vendee apparently agreed that the purported sale was actually a contract of security.
In Green v. McDade, supra, the plaintiff sought to have a purported deed set aside because he thought he was signing a mortgage. Plaintiff’s uncontradicted testimony showed that shortly before the execution of the instrument in question, plaintiff had borrowed money from the purported ven-dee, that plaintiff resided on the property for 17 years after the execution of the instrument, and that plaintiff had paid the taxes on the property during that time. In holding that the deed should be declared null and void, the Court of Appeal said:
“Not one word of the testimony of plaintiff was contradicted on the part of defendant. * * *.
‡ sfc ¿{i % ‡ :|í
“Upon the facts as disclosed by the record, we are convinced that plaintiff had no intention of making conveyance of the property, and that, he was under the distinct and definite impression that the instrumént he executed was a mortgage. To our minds, no other conclusion could be reconciled with the facts., adduced upon trial of the case. It is inconceivable that a purchaser of a forty-acre tract of land of a value of some $20 per acre, with modest but nonetheless satisfactory improvements thereon, would suffer seventeen years to pass' without making the slightest attempt to take possession, or in any way to assert his rights of ownership. Over this period of time the purported vendee suffered his vendor to remain in absolute, open and uncontested possession, to exercise every right of ownership, all without payment of a single solitary cent in the nature of rent.” [17 So.2d 640],
In Williams v. Robinson, supra, the testimony of plaintiff, a semi-literate man, to the effect that the instrument in question was neither read nor explained to him was corroborated by the testimony of the notary. In setting aside the purported conveyance, the court, said:
“* * *. The plaintiff, Williams, testified that he did not accompany Robinson to the notary’s office to procure the preparation of the instrument, and that he appeared at the notary’s office with Robinson after the instrument had been prepared; that he did not read the instrument, nor was it read to him, and that he believed it to be an act of mortgage. A signed stipulation by the notary, Mr. J. C. Shows, * * *, completely corroborates plaintiff’s testimony.” [98 So.2d 846.]
In the instant case, unlike the Green and Williams cases, defendant’s testimony to the effect that the instrument was neither read nor explained to him was contradicted by the testimony of the notary, a disinterested person, who stated that he explained the nature of the instrument to Brooks. Also, the evidence shows that Foster did not allow Brooks to remain in unrestricted possession of the property after the sale, but that fol *680 lowing the sale Foster paid for the planting of several thousand trees on the property and visited it from time to time. Foster allowed Brooks to remain on the property for about five months without paying rent, but during that time he was negotiating with Brooks for the latter to make improvements on the property or to repurchase it. At the end of that five-month period Foster demanded that Brooks either begin paying rent or vacate the premises.
Defendant may have orally agreed with Foster that he could repurchase the property at some future time, and in executing the deed he may have relied to some extent on Foster’s oral assurance that the property would be resold to him. It is well settled, however, that a contract to purchase or sell immovable property, to be enforceable, must be in writing, and that parol evidence cannot be received over objection to prove the existence of such an agreement. LSA-C.C. Art. 2462; Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879. The evidence convinces us that the defendant was not misinformed as to any of his rights under such an oral agreement, if an agreement to that effect, in fact, did exist.
After considering all of the evidence presented in this case, we are convinced, as was the trial judge, that in executing the act of sale on October 26, 1959, defendant intended to convey title to the property to Mrs. Gross, and that defendant was not mistaken as to the nature of the instrument which he signed in the notary’s office.
Defendant contends finally that the price received by him for this property was less than one-half the value of the property at the time of the sale, and accordingly that he is entitled to have the sale rescinded for lesion beyond moiety. Fie relies on LSA-C.C. Art. 1860 et seq., and Art. 2589 et seq. and Foos v. Creaghan, 226 La. 619, 76 So.2d 907.
The evidence indicates and the trial judge concluded that the property had a value of $3,000. In the act of sale from defendant to Mrs. Gross, defendant acknowledged receipt of the recited consideration of $2,114.-30. The notary before whom the deed was executed testified that he actually received from the purchaser annd disbursed the sum of $1,534.30 in satisfying mortgages affecting this property and in paying the costs of completing the sale. Defendant testified that he did not receive any additional sums of money from the purchaser.
The trial court concluded that the vendor, Brooks, had failed to establish that the full amount of the consideration shown in the deed had not been paid, and we think he was correct in that conclusion. If we or the trial court should be in error in that respect, however, the evidence establishes that at least $1,534.30 was paid, which is more than one-half of the maximum value of the property at the time of the sale. In our opinion, therefore, the trial court correctly rejected defendant’s demands that the sale be rescinded because of lesion beyond moiety.
Plaintiffs instituted this summary proceeding to evict defendant under the provisions of LSA-R.S. 13:4911 et seq. (now Arts. 4701-735 of the LSA-Code of Civil Procedure). Defendant objected to tire use of summary proceedings on the ground that according to the allegations in the petition Brooks does not come within the class of occupants who may be evicted under that statute. Defendant contends that the statute applies to an occupant of land holding through the accommodation of the owner, and it is argued that this language implies that there must be some sort of agreement between the owner and the occupant before the statute can be applied.
We find no merit in this argument of counsel for defendant. In Creath v. Baldo, La.App.Orleans, 49 So.2d 773, and in Caillouette v. Trahant, La.App. 1 Cir., 122 So.2d 696, the defendants were occupying the premises there involved without any prior agreement with the owners, and the courts of appeal affirmed the judgments of *681 the lower courts evicting the defendants from the premises by summary procedure.
LSA-R.S. 13:4911 et seq., is specifically applicable to “any occupant of land holding through the accommodation of the owner, or any other occupant other than a tenant or lessee.” (Emphasis added.) Assuming that there was no agreement between Foster and Brooks permitting the latter to remain on the property indefinitely, as contended by defendant, Brooks still falls squarely within the provisions of the act, since he was an “occupant other than a tenant or lessee.” In our opinion, therefore, the trial judge was correct in overruling the obj ection by counsel for defendant to the use of summary proceedings to evict the defendant.
For the reasons herein assigned, the judgment of the district court is affirmed. All costs of this appeal are to be paid by defendant-appellant.
Affirmed.