CHASEZ, Judge.
The plaintiff in this action, The Warren Refrigerator Company, Inc., filed this suit on October 11, 1966, against the defendant herein, Vincent J. Cavallino, d/b/a Caval-lino’s Super Market, for $62,583.00, plus interest and attorney’s fees, allegedly due on a certain promissory note secured by chattel mortgage.
*622 In its petition the plaintiff prayed for and secured a writ of sequestration under which it seized refrigerating equipment owned by defendant subject to the chattel mortgage. The defendant answered the suit and denied that there was a past due balance on the note, averring that as of the time of the filing of the suit all installments which were due were paid and two additional installments had been in fact prepaid. He incorporated a reconventional demand in his answer for alleged damages sustained as a result of the sequestration and seizure. The defendant then filed a motion to have the writ of sequestration dissolved on a rule to show cause.
A lengthy hearing was held on this motion during which considerable testimony and evidence was introduced. The trial judge denied the motion and thereby dismissed the plea for dissolution of the writ.
The defendant applied for writs of cer-tiorari, prohibition and mandamus to this court, and asked that the decision which denied the motion for dissolution be reviewed. This application for writs was denied by this court, on the finding that the showing was insufficient to warrant the exercise of our supervisory jurisdiction.
Defendant then applied for these same writs to the Supreme Court of Louisiana. The Supreme Court denied the application for the stated reason that “There appears no error of law in the ruling complained of.” Warren Refrigerator Company, Inc. v. Cavallino d/b/a Cavallino’s Super Market, 250 La. 636, 197 So.2d 653 (1967).
The matter was then tried on its merits by the trial court. No further evidence or testimony was introduced, and the case was submitted on the record as formulated during the hearing on the motion for dissolution of the writ of sequestration. Judgment was then rendered in favor of plaintiff and against defendant in the full sum of $62,583.00 with six per cent (6%) per annum interest thereon, and fifteen per cent (15%) interest additional upon the aggregate sum of principal and interest with attorney’s fees and all costs of the suit. The writ of sequestration was maintained, the property ordered sold and the defendant’s reconventional demand was rejected. The defendant now prosecutes this appeal.
A full understanding of the chronological development of this case is essential to a correct decision herein. The record reveals that some time during the year 1964, the defendant’s super market was destroyed by fire. In April, 1965, the defendant purchased the refrigerating equipment in question from the plaintiff, for the purpose of opening his new super market. The sale price of this equipment was $79,127.22, of this $8,277.22 was paid in cash and the balance accepted in the form of a promissory note dated April 8, 1965 in face amount of $70,850.00. This note indicated maturity simply by reciting across its margin: “59 payments at $1,-181.00 each and one payment of $1,171.00.”
There was nothing on the note to designate the due date of the first installment. However, the note was paraphed for identification with a chattel mortgage of even date. This mortgage recited the note was payable as follows:
“ * * * in 60 installments 59 installments being'for the sum of $1,181.00 each and the last installment being for the sum of $1,171.00, the first installment being due on the 30 days after opening and one each of the remaining installments shall be due on the same day of each month thereafter until all are paid; * * (Emphasis ours.)
The defendant testified that at the time he purchased the refrigeration equipment and executed the promissory note and chattel mortgage he expected to open his store for business a week or two after the Labor Day Weekend in September 1965. However Hurricane Betsy intervened in early September and did considerable damage to his premises so he was unable to open at that time, and did not in fact open until April 28, 1966.
*623 The defendant stated that some time during October 1965 in response to plaintiff’s inquiries for payment on the note he promised that he would make a payment during that month. Finally after repeated demands by plaintiff in the form of telephone calls and letters, on January 24, 1966 the defendant made his first payment of $1,181.00 on the note. He made a second payment of the same amount on January 28, 1966, a third on February 4, 1966, and a fourth on March 17, 1966. Some time thereafter he turned the matter over to his attorney, Mr. Nicholas Gagliano.
Mr. Gagliano testified at the hearing on the motion to dissolve the writ of sequestration. He stated that defendant told him of his problem regarding the note and chattel mortgage some time during the month of April, 1966. Gagliano read the chattel mortgage and advised defendant it was his opinion that no payments were due until 30 days after the super market opened for business, which had not at that time occurred. Gagliano then began to represent the defendant in his dealings with the plaintiff involving the chattle mortgage.
Gagliano testified he telephoned the attorney representing the plaintiff, Mr. Charles D. Viccellio, and advised him that defendant was not in arrears in his payments on the mortgage, but was in fact then prepaid by four installments. He received several letters from Viccellio demanding payment, in which the possibility of litigation and its consequences to defendant were mentioned.
On May 20, 1966 Gagliano wrote a letter to plaintiff’s attorney enclosing a check for $1,181.00. In this letter he stated:
“Enclosed herewith is a check in the sum of $1,181.00 payable to Warren Refrigeration to cover what you have designated as the April 22 payment in your recent letters. Within the next week or ten days I will be sending you another check in the same amount to cover the payment that you have designated as the May 22nd payment.
“Mr. Cavallino would rather make these payments as indicated above rather than expend the sum of $274.16 to bypass the so-called April 22nd Payment.
“I agree with you that it would be expensive for both parties to litigate this matter in court, but if, for some reason, your client decides to pursue their course, I can only suggest that we will defend it vigorously, and do our very best to establish that you have been paid in advance rather than in arrears.
“I hope we can put this matter at rest at least temporarily with the enclosed check and the one to immediately follow”
In response he received the following letter from Viccellio dated May 24, 1966.
“We were happy to receive your letter of May 20th and acknowledge First National Bank money order drawn on Ca-vallino’s Super Market, Inc. in the sum of $1,181.00 representing the April 22, 1966, payment. It is our understanding that in- the next week or ten days we may expect to receive the May 22nd payment of $1,181.00.
“We are accepting these payments in this manner with the distinct understanding that they are sent as an acknowledgment that the first installment on this contract fell due on December 22nd and payments have been made for December, 1965, and January, February and March, 1966, plus the April payment which you have now paid.
“Should this be improper understanding of the basis of this transmittal, please let me know.”
On June 8, 1966 Viccellio wrote Gagli-ano:
“Please advise us when we may expect the May 22nd payment on the note of Vincent J. Cavallino with The Warren Refrigerator Co., Inc. We received on the 23rd the April payment.
*624 “Since you had indicated that we would receive the May payment in a week or ten days we felt sure by now we would have received the same. Please advise.”
On June 16, 1966 Viccellio sent Gagli-ano the following:
“We have received nothing in payment of the May 22 note, and it will shortly be June 22.
“Please advise.”
Finally on June 29th Gagliano wrote this letter to Viccellio and enclosed therein a check for $2,362.00:
“In confirmation of our long distance conversation of this date, I am enclosing herewith a check in the sum of $2,362.00, covering the installments due on May 22 and June 22, in the captioned matter.
“I have been assured that, due to new financing arrangements, all future payments on your contract will be made timely in accordance with the agreement. Please advise whether these payments should be made through your office or through your client.
“With kindest regards and anticipating your early reply, I am,”
Viccellio responded to this letter on July S, 1966 as follows:
“This will acknowledge receipt of check # 370 of Cavallino’s Super Market, Inc. payable to Warren Refrigeration in the sum of $2,362.00, representing the May and June payments on the Warren Refrigerator note.
“Future payments should be made directly to the Company, and by a copy of this letter, we are calling upon the Company to notify Cavallino’s Super Market, Inc. directly where the note should be paid.
“Should you require anything further, please let us know.”
No further payments were made by the defendant on the note. This suit was subsequently filed on October 11, 1966.
As stated earlier it is defendant’s contention that, as of the date the suit was filed, he was not delinquent in his payments on the note. He relies on the stipulation in the mortgage which states that the first payment was due 30 days after the opening of the store. Further as he established at the hearing on the motion to dissolve the writ of sequestration that the store was not opened until April 28, 1966, and as he did make seven payments, he contends he was thus current in his obligation on the note through November 28, 1966.
In support of this argument, citing LSA-C.C. art. 2048,[1] defendant contends that the “30 days after opening” stipulation was a term of the contract, and under the express provisions of LSA-C.C. art. 2053[2] the payments were not due before this term expired.
Finally it is defendant’s contention that the payments which he made prior to the opening of his store April 28, 1966, did not constitute a waiver of the stipulated term. He stated they were merely prepayments made to ease the pressure caused by the plaintiff’s repeated demands and to forestall any possible litigation which would precipitate defendant into bankruptcy.
Plaintiff on the other hand makes two arguments in support of its position.
*625 First it contends that the stipulation under consideration in this litigation was a condition rather than a term, and as such was waived by defendant’s voluntary prepayment on the mortgage prior to the opening of the store. Plaintiff relies on LSA-C.C. art. 2049 [3] and Morrison v. Mioton, 163 La. 1065, 113 So. 456 (1927), and other jurisprudence.
Second, and we believe more important, plaintiff argues that some time after defendant’s store was opened for business, the attorneys for both parties renegotiated the terms of the chattel mortgage as to the time when payments were due. Plaintiff alleged in its petition that by agreement with the defendant the payments began to fall due on December 22, 1965 and continued to be due on the 22nd day of each month thereafter. Apparently it is its position that this agreement was made some time in June 1966 and was retroactive to the previous December.
Thus this second contention involves a factual determination as to whether there was an agreement between the parties through their attorneys to renegotiate the maturity date of the note.
On this point the trial judge made these statements in his reasons for judgment filed in connection with his decision on the motion to dissolve the writ of sequestration :
“It further appears that plaintiff was willing to and did re-negotiate a new due date under the contract for the purpose of preventing the defendant from being in default. The testimony, exhibits in the record, particularly the correspondence between the attorneys, and the payments subsequently made, satisfy the Court that the due date was re-negotiated and is in accordance with the allegations of plaintiff's petition.”
We accord great weight to these factual findings by the trial judge.
The letter written by Mr. Nicholas Gagliano, defendant’s attorney at the time, dated June 29, 1966 and quoted above, supports this factual conclusion. It is apparent from this correspondence that there was an agreement between both counsels acting for the parties herein, to treat the installment due dates as being on the 22nd of each month. And more important the check satisfying the sixth and seventh payments, was acknowledged to have made defendant current in his payments only through June 22, 1966. All future payments were to have been timely made monthly thereafter. As the defendant admits he made no additional payments after June 29, 1966, there can be little question but that defendant was delinquent on the note and mortgage on October 11, 1966 when this suit was filed.
As we have resolved this appeal on factual conclusions, we do not find it necessary to discuss at length the issues raised relative to the payment stipulation in the chattel mortgage as written.
Suffice it to say we cannot agree with appellant in his conclusion that the stipulation on the chattel mortgage was a term within the contemplation of LSA-C.C. art. 2049. The defendant's obligation to pay on the note was to hinge on an event, which was not certain within the contemplation of that article. While it was the intent of the defendant to open his store when he executed the mortgage, it was not an event which was “in the course of nature” bound to occur.
We find however that the question of the effect of this condition upon the obligation between the parties herein to he moot, for as stated above the record supports the trial judges decision that the *626 parties through their attorneys renegotiated the payment provisions in the mortgage.
For the reasons hereinabove expressed the judgment rendered herein by the trial court on May 10, 1968 in favor of plaintiff, The Warren Refrigerator Company, Inc. and against defendant, Vincent J. Cavallino, d/b/a Cavallino’s Super Market, which likewise dismissed the recon-ventional demand of the defendant, is affirmed in all respects, appellant to pay all costs of this appeal.
Affirmed.

. LSA-C.C. art. 2048 provides :
“Art. 2048. The time given or limited for the performance of an obligation, is called its term.”

. LSA-C.C. art. 2053 provides :
“Art. 2053. The term is always presumed to be stipulated in favor of the debtor, unless it result from the stipulation, or from circumstances, that it was also agreed upon in favor of the creditor.”

. LSA-C.C. art. 2049 provides :
“Art. 2049. A term may not only consist of a determinate lapse of time, but also of an event, provided that event be in the course of nature, certain; if it be uncertain, it forms a condition.”