AYRES, Judge.
The object of this action is threefold: to decree (1) a purported act of sale of a described 80-acre tract of land to be a contract of security, (2) that petitioners are the owners of the land, and (3) that the debt for which the purported sale was executed to secure is prescribed.
The defense is that the act of sale, redemptive in form, has, by lapse of the prescribed time, become absolute, vesting title to the property in defendant. Defendant further contends that by the execution of another instrument correcting the description of a portion of the property without reference to any redemptive period, the original deed was thereby converted into and took upon itself the nature and effect of an outright sale of the property.
In addition, defendant claims, for the first time, in this court, that plaintiffs’ action is in the nature of an action for the reformation of the deed and as such is prescribed by the lapse of ten years under LSA-C.C. Art. 3544. A special plea to that effect was filed in this court.
The trial court concluded, after trial, that the sale was complete and that, accordingly, title was vested in defendant. Plaintiffs’ demands were, therefore, rejected and defendant was decreed the owner of the property. From the judgment plaintiffs appealed suspensively and devolutively to this court.
The pertinent facts may be first briefly reviewed.
Plaintiffs, Marshall Woods, Mary Woods Howard, and John Woods, Jr., are the children and sole heirs of John Woods, Sr., and Lina Woods, both now deceased. During the marriage of plaintiffs’ parents, the commmunity of acquets and gains existing between them acquired by purchase from Alice C. Patterson et al, on January 19, 1903, a tract of land described as the SE}4 of the SWJ4, Sec. 23, and, on November 4, 1921, another tract described as the NEi/4 of the NW14, Sec. 26, all in T. 11 N., R. 13 W., Louisiana meridian, DeSoto Parish, Louisiana.
Lina Woods, surviving widow of John Woods, Sr., and plaintiffs, on November 20, 1950, mortgaged the aforesaid property to the First National Bank in Mansfield to secure a loan evidenced by a note of $2,-013.01, payable $1,013.01 one year after date and $1,000.00 two years after date. This note was subsequently negotiated to Thomas W. Hardee, Jr. The note was afterward acquired by defendant’s father, John B. Stoma, of whom defendant was an only son and sole heir. Thereafter, on June 23, 1953, plaintiffs and their mother executed the instrument which is the subject matter of this action. Upon presentation of the note on the date previously mentioned, the mortgage was canceled and erased from the records.
The instrument or deed with which we are concerned recited a consideration of $2,492.75 paid in cash for the property, an *322 amount proximating the sum due on the original note. This instrument also contained this recital:
“The vendors herein are hereby given the right to redeem said property within twelve months from the date of this sale, June 23rd 1953, upon paying the amount of $2,492.75, together with 8% per annum interest thereon from this date until paid, as well as all costs of sale; otherwise, after said date if said amount is not paid with interest and costs, said property shall completely be vested as to title in the owner, John B. Stoma, free and clear of all encumbrances.'’
Thereafter, under date of November 25, 1957, another instrument was executed by plaintiffs and their mother and John B. Stoma, the purpose of which was to correct the section number in the description of one of the 40-acre tracts. The consideration was recited to be the same as shown in the original instrument. No redemptive period was noted in the second of these instruments, the only purpose of which was to correct an erroneous description, as aforesaid, of a portion of the property misde-scribed in the original.
The principle has been well settled in the jurisprudence of this State to the effect that, as between the parties, and consequently between the privies, and in the absence of evidence to the contrary, a sale of immovable property will be regarded as a contract of security if the vendor specifically reserves the right of redemption and thereafter remains in possession of the property during the entire period allowed for its redemption. Latiolais v. Breaux, 154 La. 1006, 98 So. 620 (1923); Marbury v. Colbert, 105 La. 467, 29 So. 871 (1901); Gross v. Brooks, 130 So.2d 674 (La.App., 3d Cir. 1961); Jackson v. Golson, 111 So.2d 876 (La.App., 2d Cir. 1959 — writs denied); Jackson v. Golson, 91 So.2d 394 (La.App., 2d Cir. 1956 — writs denied).
With respect to the rights of the parties and their privies in situations such as presented here, the court, in Kernan v. Baham, 45 La.Ann. 799, 13 So. 155, 159 (1893), observed :
“The extent of the rights of the deceased and of the community regulates those of the heirs and of the widow in community, who succeed to all his rights, and those of the community, but they are transmitted with all their defects, as well as all their advantages, the change in the proprietor producing no alteration in the nature of the title or possession.”
See, also:
Jackson v. Golson, supra (91 So.2d 399).
Unquestionably the issue of possession has an important bearing upon the determination of the rights of the parties. More accurately stated, the question is, Did plaintiffs (debtors) voluntarily deliver possession of the property to their creditor, either John B. Stoma or defendant, Pete Stoma? The delivery of possession is an absolute requirement for the translation of title under a deed with a right of redemption. This principle was unequivocally declared in what is uniformly regarded as the leading case on this issue — Latiolais v. Breaux, supra. The court therein declared (98 So. 621):
“Hence the one test by which to determine whether a contract evidences a real sale with right of redemption, or a mere contract of security, has ever since been whether the purchaser has gone into actual possession. [See the authorities therein cited.]
“We think the rule, as thus stated, and ■as adhered to by this court, is sound in law, simple of comprehension, and easy of application. It avoids the necessity of attempting to reconcile the always conflicting testimony of the parties, where perchance each may be telling the truth as to his own intentions; and thus leaves the contract to be interpreted by facts readily proved and in accordance with the well-settled rule of law that a contract is to be interpreted according to the *323 manner in which the parties themselves have executed it. C.C. art. 1956.
“From the foregoing it results that the title of the purchaser is perfected by the delivery of actual possession. If that delivery takes place before the delay for redemption has expired, the vendor, of course, preserves his right of redemption. But if the vendor delivers the property after the delay for redemption has expired, obviously the sale then becomes absolute. By such delivery the vendor acknowledges that the thing belongs to the purchaser, and he cannot thereafter be heard to deny the latter’s title thereto.”
We find nothing in the record that could possibly support the conclusion that plaintiffs delivered possession of the subject property to either defendant, Pete Stoma, or his father, John B. Stoma, from whom he inherited, at any time prior to the expiration of the redemptive period which was fixed in the instrument as twelve months after June 23, 1953. Thus, as was stated in Jackson v. Golson, supra (111 So.2d 879):
“From this factual conclusion it must follow that defendants bear the burden of showing the delivery of possession by Everett Jackson after the expiration of the redemptive period. It must be conceded that a voluntary delivery after such expiration acknowledges and ratifies the effect of the instrument as an absolute sale. The resolution of this proposition depends upon an issue of fact.”
There is no reason shown for any doubt that plaintiffs’ mother, together with one or more of plaintiffs, until 1963, and that one of the heirs, a plaintiff, until 1964, lived upon and occupied this property as their home. They cultivated the soil and for a time grew customary crops of cotton and corn, and eventually truck crops. Moreover, under date of April 25, 1963, an attorney on behalf of John B. Stoma made demand upon Marshall Woods to vacate the property and threatened criminal prosecution for timber allegedly cut by him if prompt restitution was not made therefor. This was a clear and unequivocal admission on behalf of defendant’s ancestor that plaintiffs were in actual possession of the property for a period as long as approximately nine years after the expiration of the redemptive period.
 Nowhere has it been shown plaintiffs have ever voluntarily delivered possession to defendant or his ancestor or that defendant or his ancestor ever had corporeal possession of the property. It appears, however, that defendant has for a number of years paid taxes on the property. This is insufficient to establish actual possession in him. Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574 (1896); Smith v. Burks, 192 So.2d 919 (La.App., 2d Cir. 1966).
The granting of oil and gas leases by both plaintiffs and defendant is insufficient to show either is in actual possession. Actual possession established to have been in plaintiffs, the execution of a lease by them is an act of civil possession sufficient to establish the continuance of actual possession theretofore begun. Thus actual possession, once begun, is continued by mere civil possession so long as it is not ousted by a counter actual possession of one year. Leonard v. Garrett, 128 La. 535, 54 So. 984 (1911); Jones v. Goss, 115 La. 926, 40 So. 357 (1906).
The trial court concluded the execution of the correction instrument was an acknowledgment by plaintiffs that title to the property had passed to defendant’s father. The document contained no recital warranting such a conclusion. The second instrument, as its language clearly declared, was executed solely for the purpose of correcting the description of the property as erroneously recited in the original instrument. It neither had nor served any other purpose. No other change or alteration was shown to have been intended *324 or to have been expressed in the language of the correction instrument.
As we understand and appreciate the facts of this case, the instrument now before us specially reserved to the “vendors” a right of redemption of the property; that the “vendors” remained in possession of and exercised dominion over the property as their own. The purported sale was nothing more than a contract of security, a pignorative contract wherein the nominal vendors continue to be the owners of the property and the nominal purchaser has only a pledge or mortgage to secure payment of his debt which he must enforce in the usual way. Latiolais v. Breaux, supra.
The defendant finally urges a contention that this action partakes of the nature of a reformation of the instrument upon which this action is predicated. On the basis of this contention, defendant has filed in this court a plea of ten years’ prescription under LSA-C.C. Art. 3544 which provides:
“In general, all personal actions, except those before enumerated, are prescribed by ten years.”
Defendant is mistaken in the -nature of this action. Reformation of the instrument has not been sought in any respect. Only an interpretation of the instrument was placed at issue; the plea of prescription is therefore without application.
The only issue remaining is plaintiffs’ plea of ten years’ prescription under the provisions of LSA-C.C. Art. 3544, here-inabove quoted, with respect to the debt contracted to be paid on redemption of the property. In this regard it appears appropriate to observe that no action has been taken to enforce this obligation. When such action is taken, if ever, a plea of prescription may be properly urged at that time, and until taken the plea appears to be premature. Hence, we pretermit, at this time, any discussion of the merits of the plea or a resolution of the issues presented thereby.
We are constrained, however, to note that John Woods, Jr., did not personally sign the instrument herein concerned, but that his signature was obtained through a power of attorney which he granted to Marshall Woods. This power of attorney, however, authorized only the execution of a note and mortgage encumbering the property. Therefore, in no event, as to John Woods, Jr., could the purported sale be construed in any light favorable to defendant other than that as a security device.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of plaintiffs, Marshall Woods, Mary Woods Howard, and John Woods, Jr., against the defendant, Pete Stoma, decreeing and recognizing plaintiffs as the true and lawful owners of and, as such, entitled to the full and undisturbed possession of the following described property, to-wit:
SEJ4 of SWJ4, Sec. 23, and NEj4 of NW}4, Sec. 26, all in T. 11 N„ R. 13 W., Louisiana meridian, DeSoto Parish, Louisiana, together with all the improvements thereon and appurtenances thereunto belonging; and
It is further ordered, adjudged, and decreed that plaintiffs’ rights to refile and re-urge a plea of ten years’ prescription, as to the obligation arising out of the contract of security or security device, be, and they are hereby, specially reserved.
Costs, including costs of this appeal, are assessed against defendant.
Reversed and rendered.