263 So.2d 96 (1972)
Howard DELCAMBRE, Plaintiff and Appellee,
v.
Verna Delcambre DUBOIS et al., Defendants and Appellants.
No. 3738.
Court of Appeal of Louisiana, Third Circuit.
March 16, 1972.
On Rehearing May 18, 1972.
*98 Armentor & Wattigny by Minos Armentor, New Iberia, for defendants and appellants.
Edwards & Edwards by Homer E. Barousse, Jr., Crowley, for plaintiff and appellee.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
This is a suit for specific performance of an alleged "counter letter", whereby plaintiff contends defendants granted him the right to repurchase certain real property. When this case was previously before us, 236 So.2d 249, we found the agreement in question ambiguous and remanded the matter for parol evidence to show the intent of the parties. Pursuant to this remand, the testimony of the attorney who drew the instrument and of some of the parties was taken. The district judge has now granted specific performance ordering defendants to convey the property to plaintiff upon payment of the specified price. Defendants appealed.
The substantial issue is whether the alleged "counter letter" is an option to repurchase, which is unenforceable since it does not stipulate a time within which to accept or reject the promise to sell.
The general facts are that plaintiff and defendants inherited approximately 4300 acres of land and owned it in indivision. In 1963, when there was no oil production from the property, plaintiff had mortgaged his interest, was being sued by his creditors and was heavily in debt. The other heirs were afraid plaintiff's creditors would seize his interest and force a partition. So they agreed that plaintiff would sell to the other heirs his interest in the 4300 acres, as well as certain other smaller tracts which he owned, in consideration of their assuming the mortgages and judgments which totaled over $60,000. To accomplish this purpose, their attorney drew a cash sale by which plaintiff conveyed to defendants the property in question for a stated cash consideration, represented by their assumption of these indebtednesses.
Contemporaneous with the sale, the parties signed a separate instrument, the one in dispute here, in which defendants granted to plaintiff "the right and option to repurchase from the said appearers, all of that certain property sold and conveyed unto them by act" (then follows the description of the cash sale). This secret agreement provides further that should plaintiff "exercise said option to repurchase the said property sold by him to the said appearers, that he will pay to them as the repurchase price thereof, all sums of money expended by appearers and paid to him as the purchase price of said property (then follows a description of certain mortgages and judgments) ... which have been made necessary in order for appearers to protect a good and merchantable title in and to said properties."
*99 In 1968, oil had been discovered on the property owned in indivision. Plaintiff sought to repurchase his interest. When defendants refused to sell, the present suit followed.
The secret agreement does not stipulate any lapse of time within which, or future event before which, plaintiff had the right to repurchase the property. The intent of the parties is shown by the testimony of the attorney who drew the instrument:
"Q. There is apparently no time set out in the option or counter letter for Howard Delcambre to repurchase it. Was it your understanding that this time was to be when he was financially able to repurchase it and the property had been paid off by them?
"A. That was the only time limitation and it was not mentioned as a time consideration as such. It was more or less as a condition precedent to his repurchasing. To the best of my knowledge, I advised them, from a legal standpoint, that if I were to put this option to repurchase the thing in the sale itself and record it, that it would act as a cloud on their title if they might want to resell this property.
"Q. That was the reason they did it as a separate instrument rather than in the same instrument?
"A. That is correct. No time limitation was ever mentioned because I don't really believe that any of them ever intended to put a time limitation on it. It was(Interrupted)
"Q. That they wanted to leave it open to him(Interrupted)
"A. That's correct.
"Q. at the time that they paid the property off and he could come across with the money, they wanted to transfer it back to him?
"A. That's correct."
The unrecorded agreement is a "counter letter". The only mention of counter letters in our Civil Code is found in Article 2239 as follows:
"Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate (legitime). (As amended by Acts 1884, No. 5)."
Planiol, Vol. 2, Part 1, No. 1186 defines "counter letter" in connection with his definition of simulation:
"There is simulation when one makes an apparent contract, the effects of which are modified or suppressed by another agreement, contemporaneous with the first and intended to remain secret. That definition, therefore, presupposes that there is identify of parties and of the object between the ostensible and the secret act. The secret act is called `counter-letter'."
Our jurisprudence has recognized that various secret acts which modify or suppress apparent contracts fall within the definition of "counter letters". For instance, in Haggard v. Rushing, 76 So.2d 52 (2d Cir. La.App.1954) the counter letter provided for a usufruct. In Louis v. Garrison, 64 So.2d 254 (Orl., La.App.1953), writ of certiorari denied, the apparent act was a sale of a dwelling, and the counter letter granted the vendor the right to live on a portion of the property for the remainder of his natural life. In Lawrence v. Claiborne, 215 La. 785, 41 So.2d 680 (1949) there was an apparent sale but the counter letter provided that the purchaser was merely an agent in whose name the title was placed for convenience. In Collins v. Brunet, 239 La. 402, 118 So.2d 454 (1960), a case similar to the present matter, the apparent agreement was a sale of land, and the counter letter was a reciprocal agreement to reconvey the property, under LSA-C.C. Article 2462, first paragraph. Of course, whatever contract is *100 provided for in the counter letter, whether it be usufruct, lease, option or reconveyance, is governed by the rules applicable to that particular kind of agreement.
Plaintiff argues first that the counter letter in this case provides for a reciprocal agreement to buy and sell, under LSA-C.C. Article 2462, paragraph 1, which reads as follows:
"A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same."
This argument has no merit. The language of the agreement shows clearly there was no agreement by plaintiff to repurchase the property. He was not obligated to accept defendants' promise to sell. Since there was no reciprocal consent to sell and to buy, there is no right to specific performance.
Plaintiff next contends that the counter letter provided an option, under LSA-C.C. Article 2462, second paragraph, which reads as follows:
"One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party. (As amended by Acts 1910, No. 249; Acts 1910, 2nd Ex.Sess., No. 3; Acts 1920, No. 27)."
It is the position of defendants that there is no option, since the agreement does not stipulate a time for plaintiff to accept or reject defendants' offer to sell. Our jurisprudence establishes a public policy in this state against holding property out of commerce, Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817; Freed Realty Co. v. Singer, 12 La.App. 369, 126 So. 74; Bristo v. Christine Oil & Gas Co., 139 La. 312, 71 So. 521; Chicago Mill & Lumber Co. v. Ayer Timber Co., La.App., 131 So. 2d 635; and Wright v. DeFatta, La.App., 142 So.2d 489. The statutory basis of this jurisprudence is found in LSA-C.C. Articles 488 and 491, which define ownership as the right to use, enjoy and dispose of ones property in the most unlimited manner. Obligations which cause property to be perpetually inalienable are contrary to our notion of ownership and therefore against public policy. See also Planiol, Vol. 1, Part 2, No. 2344 for a discussion of the prohibition against clauses of perpetual inalienability.
In the recent case of Clark v. Dixon, 254 So.2d 482 (3rd Cir. La.App. 1971) we applied these rules to a contract of option, which did not stipulate a time within which the optionee could accept or reject the offer to sell. We held the option invalid, since it could perpetually deprive the owner of the right to alienate his property.
To satisfy the requirement of a "stipulated time", plaintiff says the time of the option continued until the defendants had paid off all of the indebtedness, and plaintiff was financially able to repurchase his interest in the property. We agree that the time of an option can be until the occurrence of a certain event. LSA-C.C. Article 2049 provides:
"A term may not only consist of a determinate lapse of time, but also of an event, provided that event be in the course of nature, certain; if it be uncertain, it forms a condition."
It is apparent that both of the events, which plaintiff contends limited the time of the option, were uncertain. There was no certainty that the defendants would ever be able to pay off the substantial indebtedness, and there clearly was no certainty *101 that plaintiff would ever be financially able to repurchase his interest. These were uncertain conditions. They were not certain events which limited the term of the option. As the above quoted testimony shows, the attorney who drew the agreement understood them to be conditions and not time limitations. See Purton v. New Orleans & C & R Co., 3 La. Ann. 19; Marsh v. Lorimer, 164 La. 175, 113 So. 808; Warren Refrigerator Co. v. Cavallino, 218 So.2d 621 (La.App.1969).
Since these conditions were uncertain, they do not satisfy the requirement that the term of the option be for a "stipulated time". The reason is that if either of the conditions never occurred, the option, which is a property right and is heritable, could be perpetual and could take this property out of commerce.
Perhaps the strongest case in plaintiff's favor is Price v. Town of Ruston, 171 La. 985, 132 So. 653 (1931), which involved very peculiar facts. Mrs. Price owned a piece of land on which she was constructing a two-story brick building. She entered into an agreement with the Elks Lodge, whereby they were permitted to construct a third story for a meeting room. The agreement provided that in the event the Elks Lodge ever wanted to sell the third story, Mrs. Price would have the first right to purchase it at the price for which it was offered. The court, without much discussion, held this option was not invalid for want of a stipulation limiting the time within which it might be exercised. Apparently, the rationale of the decision is that the stipulation did not take the third story out of commerce, because it did not result in inalienability. The Elks Lodge had the right to dispose of the property at any time, the only restriction being that they had to give Mrs. Price the right of first refusal at the price for which the property was offered. The decision in Price does not offend the public policy against inalienability. That case is distinguished from the present matter on the facts.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of defendants and against the plaintiff, rejecting his demands. All costs in the district court, as well as the costs of this appeal, are assessed against the plaintiff.
Reversed and rendered.
DOMENGEAUX, Judge (dissenting).
It is my feeling that the majority opinion deviates from the avowed purpose for which this case was remanded, as stated in the original opinion reported at 236 So.2d 249. That purpose was to allow the admission of parol evidence to show motive and intent for the execution of the two documents in question. I believe also that the majority opinion is in error in that the result therein hinges upon the technical application of LSA C.C. 2462, which, inter alia, provides that one may purchase the right or option to accept or reject, within a stipulated time, an offer or promise to sell. The majority further errs, in my opinion, when it suggests that the transaction in question runs contra to our jurisprudence, which establishes a public policy in this state against holding property out of commerce. It is to be remembered that the second instrument, to which I will refer in more detail later, was indeed not recorded, and consequently there was at no time anything in the public records which prevented the defendants (vendees) from disposing of the property and thereby placing it in the stream of commerce.
At the trial held on remand, the additional evidence introduced was a series of letters exchanged between the attorneys representing the respective parties, answers to interrogatories, depositions of Mr. Bush, (the attorney who had prepared the original sale and option to repurchase) and of defendants Howard Delcambre, Lillie Delcambre Pullin, Verna Delcambre Dubois, Louella Delcambre Bourque, and a prepared deed by Verna Delcambre, et al, to Roland Dean Delcambre, et al. The trial judge, *102 after considering the additional evidence on remand opined that his original judgment was correct and again ordered the defendants to retransfer the property to plaintiff upon his paying to them the sum of $60,806.76. The judgment further ordered defendants to account to plaintiff for income derived or disbursements made on said properties from date of judicial demand.
Our principal purpose in remanding this case originally was to allow the admission of parol evidence to show motive and intent for the execution of the two documents in question. Although LSA-C.C. Art. 2276 prohibits the use of parol evidence against or beyond what is contained in a written transfer of immovable property, under our jurisprudence, parol evidence in such a case is always admissible not only to show intent when the contract is ambiguous, but also to show motive for the execution of the contract. When such occurs the parol evidence is not offered to invalidate or destroy the agreement, but on the contrary to support it. Our Supreme Court in Collins v. Brunet, 239 La. 402, 118 So.2d 454 (1960) quoted from Dickson v. Ford, Clerk, 38 La.Ann. 736 as follows:
"`The reason or the philosophy of the rule which, as an exception, flows logically from the very terms of the general rule, is that parol evidence, in such cases, is admitted, not against or beyond what is contained in the acts as a contradiction of the clear recital or legal meaning of the stipulations contained therein, but on the contrary, to give effect to the contract arising thereform, by supplementing necessary information omitted therefrom, or to ascertain the true intent of the parties when the same is not clearly expressed or described therein. As thus understood and construed, the rule is not amenable to the charge that it tends to destroy or impair the sanctity or binding force of authentic acts, but on the contrary, it tends directly to enhance the validity and efficacy of such acts, by substituting light for darkness, certainty for obscurity, and truth for error.' 38 La.Ann. at page 740. See, also, Landry v. Landry, 40 La.Ann. 229, 3 So. 728; Guaranty Bank & Trust Co. v. Hunter, 173 La. 497, 137 So. 904; Citizens Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822; Warden v. Porter, 228 La. 27, 81 So.2d 707."
A review of the evidence in this case satisfies the writer that the trial judge was correct when he concluded in his original opinion that the intent if the so-called option "...is clear and subject to only one interpretation and that is, that upon the payment of the indebtedness that the property was to be retransferred to plaintiff and that the only thing he would owe was the amount actually expended by the defendants in protecting the properties in question." His conclusion is fortified by the additional evidence placed in the record on remand. An examination, particularly of the depositions taken, satisfied me that the actions taken by the defendants in acquiring title to plaintiff's undivided interest in the properties concerned were designed to save it, pay off plaintiff's indebtedness, and subsequently retransfer it to him, at his option, on condition that they be repaid the amount expended by them in protecting it.
Concerning the intention and motivation of the parties to the contracts, Mr. Bush testified as follows:
"Q. Now, do you recall if the act of cash sale was agreed upon at the same time as the option to repurchase, or prior to the option?
A. The sequence of events as I remember it was that the agreement of these five children to purchase Howard Delcambre's interest and their agreement to pay off all judgments which might have affected his interests, .... Now, I don't remember which, but I do recall that both the sale and the option were signed the same day and at the same time and as part of the same transaction.
* * * * * *

*103 Q. Now, what was the motive and the intent of the parties in executing the act of sale and the option to repurchase?
A. Well, I don't know what their motive was other than hearsay, what they told me it was.... I was first contacted on this thing by a Mrs. Pullin ...
* * * * * *
Mrs. Lillie Delcambre Pullin and her husband. They told me that Howard, their younger brother, was up to his neck in debt and was about to lose his property to Pete Noel, who held a mortgage on his share in the properties for some twenty odd thousand dollars, and that in addition thereto, that he owed Andrew Romero Oil Company, in New Iberia, several thousand dollars, a substantial sum, and wanted to know what to do and what could be done to protect that land from passing into the hands of a stranger. Their primary consideration, as I understood it, was to keep the land together because they knew, oreither they knew or I advised the that if Howard's interest should pass into the hands of a stranger, that the stranger could force a partition and that very likely that their property would be sold at public auction, the entirety of it, and this was their moving consideration. (Emphasis added)
* * * * * *
A. They told me that Howard was relapsing into a mental condition on account of the fact that he was about to lose his land and they felt sorry for him and they had assured him orally and they wanted me to put it in writing that if he should ever become financially able to buy back his land and pay back to them whatever they had to spend to save it, that he could do so and that's what I tried to do. (Emphasis added)
Q. And that was their intent when they asked you to draw up this instrument and you did draw it up according to their instructions?
A. To the best of my ability, I did. To the best of my understanding of what they wished me to do, I did."
The majority opinion concludes, however, that the so-called option to repurchase is in truth and in fact a pure option without a stipulated term as required by LSA-C.C. 2462 and that because of this the option to repurchase is null and void. In this connection Mr. Bush testified as follows:
"Q. There is apparently no time set out in the option or counter letter for Howard Delcambre to repurchase it. Was it your understanding that this time was to be when he was financially able to repurchase it and the property had been paid off by them?
A. That was the only time limitation and it was not mentioned as a time consideration as such. It was more or less as a condition precedent to his repurchasing. To the best of my knowledge, I advised them, from a legal standpoint, that if I were to put this option to repurchase the thing in the sale itself and record it, that it would act as a cloud on their title if they might want to resell this property.
Q. That was the reason they did it as a separate instrument rather than in the same instrument?
A. That is correct. No time limitation was ever mentioned because I don't really believe that any of them ever intended to put a time limitation on it. It was(Interrupted) (Emphasis added)
Q. That they wanted to leave it open to him(Interrupted) (Emphasis added)
*104 A. That's correct. (Emphasis added)
Q.at the time that they paid the property off and he could come across with the money, they wanted to transfer it back to him? (Emphasis added)
A. That's correct. (Emphasis added)
Q. As far as you are concerned, there was absolutely no misunderstanding on their part as to those items? (Emphasis added)
A. Well, if there was, I wasn't aware of it." (Emphasis added)
The act of sale and the concurrently executed instrument must be read and construed together in view of the evidence adduced both at the first trial and at the second, held on remand.
I conclude, even though the second instrument has language indicating that it is an option to repurchase, it is, by any name, in fact a counter letter, and is not void for lack of a definite term or stipulated time as required by Civil Code Article 2462. To hold otherwise would violate the evident purposes, motives and intentions of the parties.
The only mention of counter letters in our Civil Code is to be found in Art. 2239, which recites in part:
"Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; ..."
In Karcher v. Karcher, 138 La. 288, 70 So. 228, 229, our Supreme Court, quoting Bouvier, defined a counter letter as:
"`An agreement to reconvey where property has been passed by absolute deed with the intention that it shall serve as security only. A defeasance by a separate instrument.' Bouvier." (Italics ours.)
Black's Law Dictionary, Revised Fourth Edition, defines the word "defeasance" as "an instrument which defeats the force or operation of some other deed or of an estate".
When we consider the act of sale by plaintiff to defendants, and the second instrument, together with the cause of their execution, i.e. their purpose, motive and intent, we can only conclude that the second instrument constitutes a defeasance of the act of sale and thus is in fact a counter letter under the definition thereof given in the Karcher case, supra. It was calculated to, and in fact does, defeat the force or operation of the act of sale which by its terms constituted the defendants as owners of the property in question. The trial judge was therefore correct in ordering the defendants to retransfer the properties involved to plaintiff upon his payment of the designated sum of money.
For the above and foregoing reasons, I respectfully dissent and am of the opinion that the judgment of the trial court should be affirmed.

ON REHEARING
MILLER, Judge.
On application for rehearing, the court found applicable certain civil code articles not presented by counsel or the trial court. Additional briefs were requested and filed. We now conclude that the act of sale and the counter letter (both described in our original opinion) constitute a sale of real estate with the right of redemption. LSA-C.C. Articles 2567, 2568 and Planiol vol. 2, no. 1574 are applicable and require that we reverse our decision and affirm the trial court.
"Art. 2567. The right of redemption is an agreement or paction, by which the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it."
"Art. 2568. The right of redemption can not be reserved for a time exceeding ten years.

*105 If a term, exceeding that, has been stipulated in the agreement, it shall be reduced to the term of ten years."
Planiol, vol. 2, no. 1574, in pertinent part states: "* * * This delay also applies when the parties have not fixed any."
A real and reasonably adequate consideration must be paid by the vendee (Marbury v. Colbert, 105 La. 467, 29 So. 871 [1901] ) and the vendee must have actual possession of the land in order for these articles to apply. Woods v. Stoma, 242 So.2d 320 (La.App. 2 Cir. 1970). In such cases, ownership passes to the vendee subject to a condition of redemption or vente a remere. Jackson v. Golson, 91 So. 2d 394, 399 (La.App. 2 Cir. 1956).
The right of redemption may be set forth in a written counter letter. Baker v. Patton, 191 La. 784, 186 So. 336 (1939). The price of redemption must be determinate (Hutchings v. Field, 10 La. 237 [1836] ) but may include costs and still be acceptable. Planiol, vol. 2, no. 1579. As to the delay for redemption, LSA-C.C. Art. 2568 states that the delay may not be stipulated to exceed 10 years and will be reduced to 10 years if it does. However, if no delay has been stipulated, the 10 year limitation automatically applies. Planiol, vol. 2, no. 1574. This is only logical in that if vendor is accorded, by law, a 10 year period for redemption in a situation where there is contractual intent to limit his right to a term in excess of 10 years, he should be accorded at least this much time, by law, where no intent has been manifested to limit the term of his right of redemption.
Vendor must reserve the right to redeem. If vendee grants an option to repurchase, this will not be a sale with the right of redemption. Glover v. Abney, 160 La. 175, 106 So. 735 (1935). In Glover, one of two vendors was granted the right not only to reacquire his own part of the property transferred to vendee, but also the right to acquire the part transferred by his co-vendor. Therefore this vendor assumed the role of a non-vendor (third person) in relation to his co-vendor's property and the court found the whole counter letter to be an option.
However, the characterization of the counter letter as an option or a vente a remere is not meant to depend upon whether the vendee, in the counter letter, says "I grant" or whether the vendor says "I reserve." See Baker v. Patton, 191 La. 784, 186 So. 336 (1939) where both vendors participated in the counter letter to the extent of their respective original conveyanceseach assuming the role of a prior vendor in respect thereto. The counter letter read in pertinent part:
"H. E. Patton (vendee) agrees and hereby binds and obligates himself, his heirs and assigns, to retransfer the above described property to the said J. H. Baker and J. P. Baker (vendees) ..." (Inserts added.) 186 So. 336, 337.
The court found this to be a sale with a right of redemption.
Planiol, vol. 2, no. 1573 offers insight, pertinent to the case at hand, regarding the nature of a sale a remere:
"This kind of sale is especially useful to persons who have need of money and who wish to procure it by selling their property, without however, losing the hope of getting it back someday . . . he who sells a remere first sells his property and does not recover it unless he is in a position to reimburse the funds which he received at the time."
The apparent purpose of the sale by plaintiff to his co-owners was to prevent plaintiff's creditors from acquiring plaintiff's interest in their land and thereby prevent a possible partition by licitation. The land was effectively transferred to defendants to place it out of the creditors reach and in return, defendants paid off these creditors. Plaintiff was granted the right to redeem the land when he could reimburse *106 his brothers and sisters for these expenditures.
The intent of the parties to the contract falls within the classic confines of a sale with a right of redemption as set forth in Planiol, vol. 2, no. 1573.
Defendants have been placed in possession of the land conveyed in the transaction with the exception of one small portion of land upon which plaintiff and his family continue to live. The retention of such small portions of land relative to the whole transaction has been previously held to have no effect upon the validity of a sale with the right of redemption. Brooks v. Broussard, 136 La. 380, 67 So. 65, 66 (1915).
The counter letter, which sets forth plaintiff's right of reacquisition, seems to be written in terms of a right granted by vendees and not retained by vendor, but as pointed out in Baker v. Patton, 191 La. 784, 186 So. 336 (1939), when the obvious intention of the parties is to create a sale with the right of redemption, the form of the counter letter will not prevent the judicial implementation of that purpose. See also Harper v. Citizens' Bank, 51 La.Ann. 511, 25 So. 466 (1899), and Keough v. Meyers, 43 La.Ann. 952, 9 So. 913 (1891).
Defendants' counsel points out that plaintiff's right is termed "an option" in the counter letter. However, this was of no consequence in Brooks v. Broussard, supra. The court (at 67 So. 65, 66) quoted the agreement involved therein:
"This option and contract is to expire..." (Emphasis added.)
The court found this "option" to be a right of redemption.
The trial court ordered defendants to retransfer the property to plaintiff upon his paying to them the sum of $60,806.76. Plaintiff did not answer the appeal. Defendants contend that they are entitled to $80,219.84, the amount which plaintiff would presently owe his creditors in the event defendants had not paid plaintiff's indebtedness.
We do not reach this issue because the mineral royalties received were substantial and reduced the amount owed by plaintiff to less than the amount awarded by the trial court. The original vendee in a sale with a right of redemption is accorded the status similar to that of a usufructuary (Patterson v. Bonner, 19 La. 508 [1841] and is entitled to the fruits of the property. LSA-C.C. Art. 2575. However he is not entitled to things, such as timber, which are not fruits. Steib v. Joseph Rathborne Land Co., 163 So.2d 429 (La.App. 4 Cir. 1964).
Defendant makes an additional argument that a legal tender of the redemption price is a necessary prerequisite to the initiation of suit on the contract. He cites several cases, none in point, and we believe that the law is otherwise. In Patterson v. Bonner, 14 La. 214, 234 (1839), the Louisiana Supreme Court dealt directly with this question and paraphrased approvingly from Troplong Contract deVente, No. 718 et seq.
"1. That as the defeasible condition rested solely with the vendor, the expression of his will to dissolve the contract must have the same effect as the will of both parties to create the contract.
2. That this need not be accompanied by `les offres reel,' (a tender) but that mere verbal offer sufficed.
3. That such offer, made within the term allowed for redemption, preserved the right of redemption, and authorized the action after the expiration of the time."
The court pointed out that on the basis of this authority, a verbal offer to redeem was the only necessary prerequisite to a suit to dissolve the contract and ordered the property returned to the vendor upon payment by him of the redemption price. See also, LeBoeuf v. Malbrough, 188 So.2d 196 (La.App. 1 Cir. 1966), pointing out *107 that such a verbal offer, made prior to the expiration of the redemption period, preserved the right of redemption even after the time for redemption has lapsed. We find that a verbal offer was made in this case and defendants were properly ordered to reconvey the property to plaintiff upon his payment of the required sum.
The trial court's judgment is now affirmed. Costs of this appeal are assessed to defendants. All parties are granted the right to apply for a rehearing.
Affirmed.
DOMENGEAUX, Judge (concurs).
I adhere to the expressions contained in my dissenting opinion on the argued hearing, and for the reasons contained therein concur in the result reached on rehearing.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge (dissenting).
I cannot agree there was a sale with a right of redemption. An essential element of such a contract is that the vendor must reserve the right to repurchase. If, on the contrary, the right to repurchase is granted by the vendee, the contract is an option and not a sale with a right of redemption. This fundamental distinction between an option and a sale with a right of redemption was recognized in Pitts v. Lewis, 7 La. Ann. 552 as follows:
"`It is elementary that there is no vente a remere unless the right to take back the property, on refunding the price, be stipulated in the act of sale, so as to form one of the reservations of it, and that if it is appended by a subsequent act to a sale originally pure and simple, it is either a resale or a promise to sell.'"
In the later case of Glover v. Abney, 160 La. 175, 106 So. 735 (1925) the court held that the right of redemption could be in a counter-letter separate from the sale, but adhered to the holding in the Pitts case as follows:
"A sale with the right of redemption, or vente a remere, is a sale in which the vendor reserves the right to take back the property by returning the price paid for it. Civil Code art. 2567. The instrument under consideration does not show that the vendors, Barcus Hubbard and Mary Glover, reserved any right whatever to redeem the property sold by them. To the contrary, the instrument, instead of showing that they reserved any such right, shows that one of them, to wit, Hubbard, was given the right by the vendee to purchase not only that part of the property which he himself sold, but also the part that his covendor, Mary Glover, sold. Whatever right, if any, there is flowing from the instrument is a right granted by the vendee, and not one reserved by the vendors, and therefore cannot be classified as an instrument granting a right of redemption, but only as one purporting to grant an option."
The counter-letter at issue here provides in pertinent part that the defendants "do by these presents agree, grant, and deliver unto Howard Delcambre, the right and option to repurchase from the said appearers..." Furthermore, the counter letter states "and the said Howard Delcambre declared and agreed that should he exercise said option to repurchase the said property sold by him to the said appearers..." From this we see that the language used in the instrument clearly states that it is an option granted to the plaintiff to purchase the property, and not a right reserved by him to redeem the property.
In addition to the clear language of the contract, the parole testimony of the parties and of the attorney who drew the instrument shows they intended the counterletter to be an option. The attorney says it was his purpose to draw an option. He does not mention a sale with a right of redemption. It is apparent that the parties *108 and their attorney understood it was a contract of option.
I agree the court should consider the entire factual situation, rather than the mere words "grant" or "reserve", in determining whether there is a sale with a right of redemption. However, the facts in this case show clearly that the parties intended an option and that neither they nor their attorney even thought of a sale with a right of redemption.
The majority opinion states "The intent of the parties to the contract falls within the classic confines of a sale with a right of redemption" as set forth in Planiol, Vol. 2, No. 1573. The citation from Planiol reads as follows:
"This kind of sale is especially useful to persons who have need of money, and who wish to procure it by selling their property, without however, losing the hope of getting it back some day. It is a transaction analogous to the loan on the mortgage, with this difference that its elements are present in an inverse chronological order: the person who borrows by mortgaging his immovable provisionally retains the ownership, and does not lose it unless he is unable to reimburse the loan when it becomes due; he who sells a remere first sells his property and does not recover it unless he is in a position to reimburse the funds which he received at the time.
"The sale with the right of redemption is a bad system of credit: it was useful for centuries before the establishment of the modern mortgage system. In our day, there is hardly any reason for its retention, and it often conceals usurious contracts of land, but the dangers which it presents because of the employment made of them can only be studied in connection with the loan of money and pledge (infra, Nos. 2071 and 2460)."
Of course, in the present case the basic situation was that the plaintiff was badly in need of money and he wished to procure it without losing his property, or at least the hope of getting it back some day. The parties had a choice of at least three security devices: (1) A mortgage, (2) sale with an option to repurchase and (3) sale with a right of redemption. Counsel for defendant argues it was an attempted option and counsel for plaintiff argues it was either a sale with a right of redemption or a pignorative (mortgage) contract.
The choice of security device was very important, because each is subject to different rules which produce substantially different legal effects. For instance, in the present case, although there was no oil production from the large tract of marsh land at the time of the agreement, oil was discovered soon thereafter and large sums of royalty have been paid to the defendants. If the agreement were a mortgage, then of course the plaintiff would retain these royalties. Also, if the agreement were a sale with a right of redemption, the plaintiff would be entitled to the resoration of the royalty under LSA-C.C. Article 2578. See Harang v. Bowie Lumber Company, 145 La. 96, 81 So. 769 (1919) and Elder v. Ellerbe, 135 La. 990, 66 So. 337 (1914) which hold that mineral royalties, like timber, are not classified as fruits which defendants could retain under LSA-C.C. Article 2575.
However, if the security device chosen were a valid option, then of course the defendants would have enjoyed the full rights of ownership of the property until the option was exercised, and defendants would retain these mineral royalties.
Another substantial difference in these security devices which may be material in the present case, is that under LSA-C.C. Article 2587, "The vendor who exercises the right of redemption, is bound to reimburse to the purchaser, not only the purchase money, but also the expenses resulting from necessary repairs, those which have attended the sale, and the price of the improvements which have increased the value of the estate, up to that increased *109 value." Of course, the plaintiff in the present case did not plead that this was a sale with a right of redemption, and hence legal issues pertinent to this type of transaction were not at issue and no evidence was introduced in that regard. This in itself is sufficient reason that we should not decide the case on that basis. It may be that the defendants made necessary repairs or that they made improvements to the property which have increased its value, in which event, they are entitled to allege and prove reimbursement for these amounts.
Finally, the holding that this is a sale with a right of redemption is in direct conflict with the established jurisprudence that delivery of corporeal possession is an absolute requirement of a sale with a right of redemption, Woods v. Stoma, 242 So.2d 320 (La.App. 2d Cir. 1970) and the cases cited therein. In the present case, the property consists of three principal tracts: (1) the 4300 acres of marshland; (2) plaintiff's home, and (3) the property on which plaintiff operates his fuel dock business. Although the evidence may be sufficient to show that defendants took actual possession of the 4300 acres of marshland, it is conceded by all parties that plaintiff has never parted with corporeal possession of the other two tracts, i.e., his home place and his business place. The retention by plaintiff of possession of these two tracts is not only another factor indicating the parties did not intend a sale with a right of redemption, but absolutely negates such a transaction as to them.
In an effort to overcome the effect of the rule regarding the transfer of actual possession, the majority cites Brooks v. Broussard, 136 La. 380, 67 So. 65 (1915), for the proposition that retention by the vendor of a small portion of land relative to the whole, does not negate the validity of a sale with a right of redemption. I have carefully read the Brooks case and do not find it contains such a holding. The facts were that Broussard owned a 233 acre tract of land which was heavily encumbered. He sold the property to Brooks in consideration of the purchaser assuming the encumbrances. In a subsequent counterletter, it was agreed that Broussard had the "option" to repurchase the land within a year, and that Broussard could continue to live on the place and raise a crop. When Broussard failed to make the required payments on time, Brooks sued for recognition of his title. The issue was whether the transaction was a sale or a mortgage. The court held it was a sale, and that Brooks was the owner. The court did not hold that it was a sale with a right of redemption. It could not, since Broussard remained in possession. The court merely mentioned in passing that even if the transaction had been a sale with a right of redemption, Broussard did not exercise his redemption by paying on time.
In conclusion, it is simply not fair to these defendants to say that since the plaintiff needed money and wanted to use his property as security to obtain a loan, the transaction must be construed as a sale with a right of redemption. There are at least two other security devices, mortgage and sale with an option to repurchase, which could have been used. I think it is obvious that the parties intended to use an option, which would have been much more advantageous to defendants. The court should not in effect say that since a sale with a right of redemption would be legal, that is what the parties should have used. Who knows what the parties would have done, if they had known about a sale with a right of redemption and its legal effects.
For the reasons assigned, I respectfully dissent.